UNITED STATES, Appellee

v.

JACK H. GROSSMAN, Corporal, U. S. Army, Appellant

2 USCMA 406, 9 CMR 36

No. 796

Decided April 16, 1953

Lᴛ Cᴏʟ Stewart H. Legendre, U. S. Army, and 1ꜱᴛ Lᴛ Patrick H. Thiessen, U. S. Army, for Appellant.

Lᴛ Cᴏʟ Thayer Chapman, U. S. Army, and 1ꜱᴛ Lᴛ Kenneth A. Howard, U. S. Army, for Appellee.

## Opinion of the Court

Gᴇᴏʀɢᴇ W. Lᴀᴛɪᴍᴇʀ, Judge:

Accused was convicted by general court-martial upon two charges involving, respectively, drunken driving and involuntary manslaughter, and an additional charge alleging violation of a general order pertaining to fleeing from the scene of an accident. He was sentenced to receive a dishonorable discharge, to forfeit all pay and allowances, and to be confined at hard labor for three and one-half years. The convening authority approved, the board of review affirmed, and we granted accused's petition for review in order that we might pass upon substantial questions raised by the record regarding the sufficiency of the instructions given by the law officer.

Our determination of the legal issues involved requires merely a brief statement of the facts. On October 3 and 4, 1951, the dates on which the events alleged herein occurred, accused was a member of Detachment "B," 7810 Station Complement, located at Bamberg, Germany. At about 11 o'clock on the night of October 3 he was seen at the Riverside Club in Bamberg. Approximately five or ten minutes after midnight, a bed check of the Detachment

**407**

revealed that he was absent. Shortly thereafter, between 12:40 and 1:00 in the early morning of October 4, an automobile was travelling at a high rate of speed and weaving from side to side along a street in Bamberg. As it reached a curve in the street it struck a motorcycle operated by a German national, who was thrown from the motorcycle by the impact. Medical testimony from the doctor who examined the victim after the accident established that he had died instantly as the result of his injuries. The car was not stopped nor was its speed retarded after the collision. However, an eyewitness to the accident, another motorcyclist, followed the automobile and obtained the first five digits of the license number. Eventually the automobile outdistanced the pursuer and the witness lost sight of it for approximately five minutes. He subsequently located and identified it on a parking lot inside the gate of a military installation. The guard on duty at the gate testified that the identified car had arrived a few minutes before the witness. A short time thereafter the accused was found in bed and, after much difficulty, was awakened by a guard. He was taken to a dispensary where alcoholic blood tests and other sobriety tests were given him which established that he was intoxicated.

There are three instructions which are assailed as being erroneous and prejudicial. Two deal with the elements of the substantive offenses and the third concerns the maximum punishment imposable. We shall first dispose of those concerning the offenses.

The instruction on the offense of involuntary manslaughter alleged under Charge II is attacked as being indefinite, uncertain and insufficient. It is necessary to be informed on the specification of that charge in order to appraise the instruction. It is as follows:

"In that . . . [accused] did, at Bamberg, Germany, on or about 4 October 1951, by culpable negligence, unlawfully kill German civilian Georg Beck by striking him with a vehicle, to wit: a passenger car."

In instructing the members of the court-martial on the elements of that offense, the law officer stated:

"As to the elements of proof required to sustain a conviction of Charge II, found on page 354 of the Manual for Courts-Martial under the heading of involuntary manslaughter, (a) That the victim named or described is dead; (b) that his death resulted from the act or omission of the accused, as alleged; and (c) facts and circumstances showing that the homicide amounted in law to the degree of manslaughter alleged."

Concededly, the above instruction, in defining the elements of the offense, repeats the wording of the paragraph entitled "Proof" under involuntary manslaughter (Manual for Courts-Martial, United States, 1951, page 355). It is asserted by the Government that this procedure conforms with the provision of Paragraph 73a, Manual for Courts-Martial, United States, 1951, which states that the instructions may be given in the language of the applicable subparagraph. However, we have previously held that mere compliance with the terms of that Manual provision is not, in certain cases, sufficient to define clearly the elements of the offense. In United States v. Ollie C. Williams, (No. 251), 2 CMR 137, decided March 14, 1952, we stated:

". . . . Apparently, law officers have not given due consideration to defining the crime accurately. Too much attention is being placed on the wording of the Manual to the effect that the instruction may be given in the language of the applicable subparagraph. That requirement is permissive, and in certain instances the contents may be adequate to present fairly the material issues. However, there are offenses which are not sufficiently defined and the elements must be obtained from the punitive article or from some other sources. The 'Discussion' and 'Proof' contained in the Manual quite often make general statements in reference to the crime, without specifically pointing out the particular and necessary elements, and in many instances the remarks

include statements which are not fitted to the issue involved. Some discrimination is required to extract from both the 'Discussion' and 'Proof' the essential elements of the offense or offenses shown by the evidence, and law officers should make certain that those necessary to a proper definition of the crimes are called to the attention of the courts-martial members."

The quoted remarks from the Williams case are particularly important in this instance as an inspection of the Manual will disclose that the proof portion which was read by the law officer applies equally to voluntary and involuntary manslaughter. Without discriminating between the two by isolating the elements of the offense charged that requirement of the "proof" which states "facts and circumstances showing that the homicide amounted in law to the degree of manslaughter alleged," is of no practical help to the courts-martial. This is a general statement which can be applied to any offense in the homicide field and in no way offers a guide to the court-martial.

The test we have previously announced in determining the adequacy of instructions is not ▇▇▇▇▇ ▪ whether the law officer follows the language of the Manual but rather whether the instructions as given sufficiently define the elements which must be proven in a given case, to afford a fair measuring rod by which the fact finders may properly assess and evaluate the effect of the evidence. A comparison of the offense in the present instance with the instruction given reveals the accused was charged with (1) the unlawful killing of the victim, (2) through culpable negligence, (3) by striking him with an automobile. The instruction as given permits a verdict of guilty to be based upon a finding that the death of the victim was caused by an act or omission of accused superimposed upon some facts and circumstances that the court-martial concluded would show the degree of homicide alleged. We believe the third element to be so lacking in guideposts and standards of conduct

that the court-martial could have based a finding on its own formulae. The criteria for measuring accused's conduct are unannounced and his act or omission is not delineated. The law officer furnished no measuring rod by which the degree of homicide could be determined. The specification alleges culpable negligence, but the instruction as given fails to include either the phrase or its definition. As a matter of fact the instruction entirely omits any reference to negligence either simple or culpable. Moreover, it does not differentiate between the gradations of homicide or manslaughter. It leaves this task to the imagination of the court. Conceding the guilt of the accused is established, the instructions are so incomplete and so uninformative that to affirm the findings on this exposition of the law would be tantamount to saying that in a homicide case, court-martial members need only to be told that if they find the deceased died from acts of the accused, they may assess the degree of homicide. The structure created by such an unlimited and sweeping charge does not meet the minimum requirements of the Code and we, therefore, hold the law officer erred in failing to give an appropriate instruction.

It is contended by the Government that by including the words "as alleged" in the instruction, the law ▇▇▇▇▇ ▪ officer supplied any deficiency. In United States v. Rhoden (No. 153), 2 CMR 99, decided February 26, 1952, we dealt with a similar assertion. There the charge involved an allegation of assault which, like manslaughter, has several gradations of severity. We disposed of the contention with the following language:

"It is contended by the Government that the inclusion of the words 'as alleged' cures the defect in the instruction. While this might have some merit under certain factual situations, it is not persuasive in the background of this case for the reason that the assault alleged included all gradations of the offense. *When that situation exists reference to the specification is of little help as it does not furnish a guide to differentiate*

**409**

*between the degrees of the crime. . . . ."* [Emphasis supplied]

The instant case may be distinguishable in that the specification here alleged culpable negligence and thus designated the degree of the offense with more particularity than was the case in United States v. Rhoden, supra. However, the court-martial would be required to search the Manual to discover this, and, what is more important, a legal conclusion was pleaded. Facts which might have been used as a predicate for culpable negligence were not. It can be argued reasonably that when facts are alleged in a specification and the court-martial is referred to them, a fair degree of certainty may flow out of an instruction which includes them by reference. But it is difficult to accept an argument that reference to a legal conclusion brings about the same result. We, therefore, reverse the findings on this charge.

In view of the fact that the error in the instruction on Charge II requires a rehearing and in view of ▌ the further fact that inappropriate and misleading language was used in instructing on the offense alleged in Charge I, we conclude to reverse as to it. This charge which related to the drunken driving offense, contained the following specification:

"In that . . . [accused] did, at Bamberg, Germany, on or about 4 October 1951, on Luitpold Street, operate a vehicle, to wit: a passenger car, while drunk."

On this offense the law officer gave the following instruction:

"The court is advised that the elements of the offense as to Charge I of the specification thereunder, are found on page 346 of the Manual at the bottom of the page, which are as follows. This has to do with driving a motor vehicle while drunk. Proof. (a) That the accused was operating a certain vehicle, as alleged; and (b) that he was drunk while operating the vehicle; *or, that he operated it in a reckless or wanton manner, as alleged.*" [Emphasis supplied]

A fair interpretation of the above language of the instruction indicates that the use of the disjunctive would permit a finding of guilty if the court-martial members found either (1) that he was drunk while operating the vehicle; or (2) that he operated it in a reckless or wanton manner. Were this the only error in the record we would be inclined to test it for prejudice. However, there was substantial evidence of speed and driving on the wrong side of the highway and this would support a finding of operating the car in a reckless and wanton manner, an offense not charged. We are not faced with a factual situation where we have a mountain of evidence on drunkenness and a molehill of evidence on other reckless or wanton acts. Unless the court-martial paid particular attention to the words as alleged, and applied them carefully to the specifications, there is a fair risk that an unalleged act of recklessness could have been made the basis for a finding of guilty. The Manual states that the same course of conduct may constitute both drunken and reckless driving, but that the punitive articles proscribe both and each may be charged separately. It is, therefore, prejudicial to instruct on two offenses if only one is charged and there is evidence to sustain both.

One further assignment of error must be noted. The law officer instructed the court-martial ▌ that the maximum punishments for the offenses charged included a total confinement for four and one-half years. The Table for Maximum Punishments contained in the Manual prescribes three years for the involuntary manslaughter charge, six months on the disobedience of an order charge, and six months on the drunken driving charge, making a total of four years maximum confinement for the three offenses. The error in computation is understandable since the Code in defining the crime makes no mention of personal injuries while the Table prescribes one year imprisonment for conviction on a charge of drunken driving which results in injuries to persons. Although they were established here, the offense charged in the specification did not include them as

410

an aggravating factor. A sentence is limited by the facts alleged in the specification and the personal injuries should not have been considered to increase the severity of the sentence. See United States v. Lyle, 74 BR 367, 368; United States v. Toy, 4 BR–JC 73, 74.

For the reasons stated, the decision of the board of review on the additional charge is affirmed and the findings and sentence on Charges I and II are reversed with direction to grant a rehearing on them. The record is returned to The Judge Advocate General of the Army for action not inconsistent with this decision.

Chief Judge QUINN and Judge BROSMAN concur.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Kenneth A. Howard, U. S. Army, for Appellee.