UNITED STATES, Appellee

v.

WILLIAM NICKABOINE, Private E–2, U. S. Army, Appellant

3 USCMA 152, 11 CMR 152

No. 1794

Decided July 31, 1953

Lᴛ Cᴏʟ Edgar R. Minnich, U. S. Army, and 1ꜱᴛ Lᴛ Wade J. Dahood, U. S. Army, for Appellant.

Lᴛ Cᴏʟ Thayer Chapman, U. S. Army, Lᴛ Cᴏʟ William R. Ward, U. S. Army, 1ꜱᴛ Lᴛ Martin Blackman, U. S. Army, and 1ꜱᴛ Lᴛ Ivan D. Fugate, U. S. Army, for Appellee.

## Opinion of the Court

Pᴀᴜʟ W. Bʀᴏꜱᴍᴀɴ, Judge:

A general court-martial, convened at Camp McCoy, Wisconsin, convicted the accused, Nickaboine, of desertion with intent to remain away from his organization permanently, the offense proscribed by the Uniform Code of Military Justice, Article 85(a)(1), 50 USC § 679(a)(1). The convening authority approved the findings and sentence and a board of review has affirmed. On petition to this Court, duly filed, further review was granted to consider the matter hereafter dealt with.

II

It was established at the trial that the accused was ordered from Camp McCoy, Wisconsin, to Camp Stoneman, California, for shipment to the Far East Command, with directions to report to the last-named station not later than December 9, 1951. He did not report to Camp Stoneman as ordered, but instead remained out of military control until May 30, 1952, a period of approximately six months. At the trial, the inception and duration of the absence were shown by appropriate ex-

tract copies of morning report entries. In the specification it was alleged that the absence was terminated by apprehension—and an effort was made to prove the fact of apprehension through the stipulated testimony of a Minnesota state police officer. The stipulation read as follows:

"In the above entitled case, it is agreed and stipulated by and between the accused, the defense counsel, and the trial counsel that if the following named person were present in court as a witness in this case he would testify under oath as follows:

"NAME OF WITNESS: E. M. Simenstad, State Patrolman, Malaca, Minnesota.

"STIPULATED TESTIMONY:

"I *apprehended* the accused, Private William Nickaboine, RA 17238954, ·in civilian clothing at Indian Trading Post, Vineland, Minnesota, on 30 May 1952, when the accused was involved in an· automobile accident. During the disposition of the case the accused *volunteered* the information that he was a member of the military service." [Emphasis supplied].

Although the stipulation had been accepted by accused and his counsel, the latter subsequently moved to amend the specification by striking out the allegation of apprehension. This motion was based on a contention that the portion of the stipulated testimony of the civilian officer to the effect that accused had voluntarily admitted his military status, when questioned in connection with an automobile accident, showed, in fact, that he was not apprehended, but rather that his unauthorized absence had been terminated by surrender. After extensive argument, the law officer denied the motion, and the accused was thereafter convicted and sentenced for desertion terminated by apprehension.

### III

The stipulated testimony in question constituted the only showing of the circumstances under which accused's unauthorized absence was terminated. Defense counsel argues here—as was argued at the trial—that the stipulation tended to establish not that accused was apprehended, but instead that he had returned to military control freely and voluntarily. The question then becomes one of whether the accused's revelation to civilian police that he was a service member, when in the custody of the latter, in connection with an automobile accident, and as a result of which he was surrendered to the military authorities, amounted in legal effect to a voluntary return to service control. If so, he cannot be subjected to the more serious punishment prescribed for desertion terminated by apprehension. Manual for Courts-Martial, United States, 1951, paragraph 127c, Table of Maximum Punishments, Section A.

The latter Table, with respect to the crime of desertion with intent to remain absent permanently, sets out two sorts of instances *for purposes of punishment,* namely, those "Terminated by apprehension," and those "Terminated otherwise." Obviously, the draftsmen of the Manual intended to prick out a clear line of demarcation between the two—and it is our task to survey the field, to establish that line of division as accurately and specifically as possible, and to apply the principle found to the facts of this case. Instructive in this connection are the two grades of the offense of desertion recognized in Section A of the Table of Maximum Punishments, paragraph 117c, Manual for Courts-Martial, U. S. Army, 1949, to wit: those "Terminated ·by apprehension" and those "Terminated by surrender." To the same general effect is the Manual for Courts-Martial, U. S. Army, 1928, paragraph 104c, Table of Maximum Punishments, Section A. Was the desertion "Terminated otherwise" under the current Manual intended to apply to those situations included within the phrase, "Terminated by surrender," as used in the 1949 and earlier Manuals? Or did the draftsmen of the 1951 Manual seek to effect some change with respect to the relation of punishment to the circumstances of termination, and either to add to or detract from the content of the word "surrender" as used in this connection in prior Manuals?

154

On the one hand, it is urged as a matter of plain statutory meaning that, since the accused, in the sort of case with which we are presently concerned, is charged with desertion, the word, "apprehension," as used in this connection in the present Manual, must mean apprehension *as a deserter*. It follows—the argument continues—that only one whose desertion is so terminated is amenable to the greater punishment, and that all others fall within the ambit of the phrase, "Terminated otherwise," and hence are not subject to a sentence to confinement in excess of two years. In opposition to this position, it is argued that the Manual language under scrutiny is unclear, and, therefore, that resort must be had to the objectives of the draftsmen in distinguishing between differing means of termination for punitive purposes. Once this approach is adopted, we are assured, we are led inexorably to the conclusion that no substantial departure from prior Manual language was contemplated by the draftsmen of the phrasing in force today. Only one offense of so-called "permanent type" desertion is provided by the Code—the argument proceeds—and no other may be established through action of the Executive. The *maximum* punishment for this offense, as regards confinement, has been set at three years for stateside offenses. However, it has been recognized that for present purposes there are two sorts of means by which desertions may be ended. One of these involves the case of an accused who repents of his misconduct and who voluntarily—that is willingly and without outward prompting—surrenders to the duly constituted authorities, military or civilian. The other involves the offender who does not do this at all, but whose unauthorized absence is terminated in some other manner — either through apprehension, or as a result of some external stimulus or pressure, real or fancied. As to the first, and as an act of sheer clemency, The President has provided the lesser punishment of two years confinement only; but as to the latter, the maximum permitted for the offense obtains. The accused in such a case must, therefore, bring himself affirmatively within the favored class—or, at least, must go forward with the evidence once any sort of showing of apprehension has been made by the Government.

IV

We cannot adopt the first of these views, for to do so genuinely does leave out of account that the accused is by definition a wrongdoer, seeking—in a practical sense, at least—the benefit of a mitigating circumstance, or of something very like it, in any event. On the other hand, we certainly cannot accept without qualification all of the implications flowing from the second position. The truth, we believe, lies somewhere in between. We are ▮▮▮▮▮▮ ▮ of the definite opinion that the phrase, "Terminated otherwise," as used in the 1951 Manual, is the equivalent of "Terminated by surrender" as found in earlier editions. However, the question of ▮▮▮▮▮▮ ▮ whether a particular desertion was ended by "apprehension"—that is, involuntarily—or by "surrender" or "otherwise"—that is, freely and voluntarily—must clearly be one of bare fact, unweighted by any sort of presumption. Moreover, this fact is *operative* in character, and *not* a preliminary one related to the admissibility of evidence. As such, of course, the determination of its existence rests with the military tribunal's fact-finders—the members of the court-martial—and findings thereon are open to testing for sufficiency. It is perfectly true that the fact of apprehension is not an element of the offense of desertion, but rather in the nature of an aggravating circumstance. Yet to justify the imposition of the ▮▮▮▮▮▮ ▮ greater punishment provided in such a case, it is necessary under service authorities that this fact be (1) alleged in the specification, (2) covered by instructions, and (3) established as a part of the Government's case beyond a reasonable doubt. United States v. Lyle, 74 BR 367, 368; United States v. Toy, 4 BR–JC 73, 74. See also United States v. Grossman (No. 796), 2 USCMA 406, 9 CMR 36, decided April 16, 1953.

**155**

There was no evidence whatever of apprehension offered in the present case, save that reflected in █ the stipulation, the terms of which have been set out earlier herein. In this document, and on the one hand, the civilian police offier is taken to have stated that the accused was "apprehended" as having somehow been concerned in an automobile accident, the nature and consequences of which we know nothing. Yet, on the other, it appears that he "volunteered" the information that he was a member of the military service. Quite clearly, we think, this does not establish termination "by apprehension" within the meaning of paragraph 127c, supra, as a matter of law. So far as the terms of the stipulated testimony are concerned, there is distinct and considerable ambiguity. The accused's disclosures to the state police officer—whatever exactly they were—may indeed have been wholly voluntary. On the contrary, they may have been made under the compulsions of an official situation, the exact nature of which the terse stipulative language leaves one less than fully informed—in fact almost wholly ignorant. As we view it, the evidence pointing to and away from apprehension is in virtual equipoise. If this is true, the stipulation can only provide a basis for "suspicion, conjecture, and speculation," an insufficient basis for fact-finding action. United States v. Richard Leonard Peterson (No. 199), 1 USCMA 317, 3 CMR 51, decided April 17, 1952; United States v. Duffy (No. 1404), 3 USCMA 20, 11 CMR 20, decided July 3, 1953. Certainly, a reasonable inference of termination by means other than apprehension may be drawn from the evidence. In such a case this Court should reject the conclusion of apprehension. United States v. O'Neal (No. 25), 1 USCMA 138, 2 CMR 44, decided February 7, 1952. Accordingly we must rule that there was insufficient evidence of record to sustain the finding that the accused was apprehended by civilian authorities.

V

Our attention has been drawn to a line of board of review decisions notable among which are United States v. Cox, 4 CMR(AF) 73, and United States v. Trejo, 2 CMR(AF) 591. In view of the broad fact-finding powers exercised by a board of review, we find nothing in these authorities at essential variance with what has been held herein. We do not understand them to lay down a rule of law for the determination of what is in reality a question of fact. Indeed, such an approach would not be appropriate—perhaps even impossible. Were this their effect, it would be necessary, of course, that they be disapproved.

Accordingly, the decision of the board of review is affirmed—but only in so far as it extends to guilt of desertion with intent to remain away permanently, "Terminated otherwise" than by apprehension. The record, therefore, is returned to The Judge Advocate General, United States Army, for reference to the board of review which considered the case for reconsideration of a legal and appropriate sentence.

Chief Judge QUINN concurs.

LATIMER, Judge (concurring in the result):

I concur in the results.

The accused was charged with desertion by going absent without leave with intent to remain away permanently. The Table of Maximum Punishments provides a maximum punishment of three years if the absence is terminated by apprehension and two years if it is otherwise terminated. The terminology used in the 1951 Manual is different than that used in the 1949 Manual and I conclude the change was made to reduce any area of uncertainty that might have previously existed between termination by apprehension and termination by surrender. I believe the present Manual draws a precise line of demarcation and that it was intended that absences terminated by apprehension should fall on one side of the line and those terminated by any different method should fall on the other.

Paragraph 164, Manual for Courts-Martial, United States, 1951, on page

312, dealing with desertion, sets forth the proof of this particular offense in the following language:

*"Desertion by absence with intent to remain away permanently.*—(a) That without proper authority the accused absented himself from his place of service, organization, or place of duty; (b) that he intended, at the time of absenting himself or at some time during his absence, to remain away permanently from his place of service, organization, or place of duty; and (c) that his desertion was of a duration and was terminated, as alleged."

It is noted that under subdivision (c) the Government is required to establish that the absence was terminated, as alleged. In this particular instance, it was alleged that it was terminated by apprehension and, to sustain the sentence imposed, it was incumbent upon the Government to establish that element beyond a reasonable doubt. (See United States v. Cote, 74 BR 359; United States v. Lyle, 74 BR 367; United States v. Toy, 4 BR–JC 73.) The question therefore narrows to this: Did the Government meet the burden placed on it?

There is no definition of apprehension in the present Manual and so the best information available, in service authorities, is found in Digest of Opinions of The Judge Advocate General of the Army, 1912–1940, section 416(15), June 22, 1932. In that opinion it is stated:

"For purposes of determining the measure of punishment to be given in cases of desertion the rule may be followed that if the accused initiates his return to military control by surrendering to the civil authorities or to military authorities, the desertion is terminated by surrender, but, if disclosure of his identity to the civil officers is impelled by the fact that they have apprehended him for vagrancy or on any other charge and are questioning him or about to question him, or bring him to trial before one of the minor magistrates, the return to military control is not voluntary but is caused by a desire to escape criminal action on the part of civil authorities. In such cases the desertion is held terminated by apprehension."

For my purpose I adopt the test prescribed therein. With that as my measuring rod, I search the record in vain for any evidence which establishes that the accused was apprehended. The Government seeks to defend its position by contending the accused did not initiate his return, but this does not answer the question as the burden is on it to establish the element. In order to show apprehension in this case, the Government was required to produce evidence from which it could be found fairly that the accused disclosed his identity because civil authorities had apprehended him on a criminal charge; and, that they were either about to question him concerning that charge or were about to bring him to trial for his alleged offense. The hiatus in the proof arises because of the failure to establish part of the following facts: That the apprehending officer was dealing with a criminal offense arising out of the automobile collision; that accused was being interviewed about a possible crime; that the civil authorities were contemplating trying him for a criminal violation; or, that accused was influenced to disclose his identity to escape criminal prosecution. With all those factual matters missing from the stipulation, the evidence is, as a matter of law, insufficient to support a finding that the accused was apprehended. I fail to see how the evidence as to apprehension or surrender was in equipoise—I just do not find any evidence to support a finding of apprehension.

This case, in principle, is not unlike United States v. Grossman (No. 796), 2 USCMA 406, 9 CMR 36, decided April 16, 1953. In that case we held that if the Government desired to impose the additional punishment permitted when personal injuries resulted from an automobile collision, it was incumbent upon the Government to plead and establish the injuries. Here, if the Government seeks to impose the additional penalty for apprehension, it must establish, in law, that method of termination. It

**157**

fails to do that so the record only permits a finding that the accused returned otherwise. Accordingly, the greater sentence must fail.

Lt Col George E. Mickel, U. S. Army, Lt Col Edgar R. Minnich, U. S. Army, and 1st Lt John P. Mann, U. S. Army, for Appellant.

Lt Col Thayer Chapman, U. S. Army, Lt Col William R. Ward, U. S. Army, and 1st Lt Martin Blackman, U. S. Army, for Appellee.