UNITED STATES, Appellee

v

LESLIE R. RODGERS, Chief Engineman, U. S. Navy, Appellant

8 USCMA 664, 25 CMR 168

No. 10,308

Decided February 7, 1958

*Major R. D. Humphreys,* USMC, was on the brief for Appellant, Accused.

*Lieutenant Colonel Charles H. Beale, Jr.,* USMC, was on the brief for Appellee, United States.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused was convicted of desertion, in violation of Article 85, Uniform Code of Military Justice, 10 USC § 885, and his conviction was affirmed by a board of review. In accordance with the provisions of Article 67 (b) (2), Uniform Code of Military Justice, The Judge Advocate General of the Navy has asked us to review the question whether the law officer erred to the prejudice of the accused when he failed to instruct the court-martial that it would consider the lesser offense of an unauthorized absence, in violation of Article 86, if it had reasonable doubt as to the accused's guilt of the principal offense.

It is contended that under our recent opinions in United States v Swain, 8 USCMA 387, 24 CMR 197, and United States v Cothern, 8 USCMA 158, 23 CMR 382, an unauthorized absence is always lesser included in a charge of desertion, and, therefore, must be instructed upon. The contention rests upon a misconstruction of the import of those cases. From the standpoint of instructions, a desertion charge

**665**

is no different from any other charge. In all cases, the law officer is required to instruct on the essential elements of lesser offenses which are put in issue by the evidence. United States v Jackson, 4 USCMA 294, 15 CMR 294; United States v Mingo, 8 USCMA 164, 23 CMR 388. No imagination is needed to picture a situation in which the evidence in a desertion case presents no issue on the lesser offense of unauthorized absence. For example, an accused may leave his organization without authority, telling his fellows that he intends to remain away permanently; for years he does, in fact, remain away, and in the interval he tells several persons that he is a deserter from the service and intends never to return; that, eventually, he is apprehended, and on apprehension, voluntarily tells the military authorities that he absented himself without authority and that at all times he intended to remain away permanently. Therefore, as a matter of law, and in every case, the law officer is not required to instruct on unauthorized absence as a lesser offense of desertion. Also, it is appropriate to emphasize that for the purpose of determining whether there should be an instruction on the lesser offense, we are not concerned with whether the evidence is sufficient to support the findings. We are concerned only with the much narrower question, whether there is sufficient evidence to require the law officer to submit the lesser offense to the court-martial for its consideration. United States v Swain, supra; United States v Mingo, supra.

Not much evidence was presented at the trial. The accused, a Chief Engineman, was charged with desertion for the period from September 27, 1954, to July 26, 1956. The prosecution introduced in evidence two extracts from the Administrative Remarks section of his service record and rested. The first exhibit shows that on September 27, 1954, the accused was in an unauthorized absence status from his organization, United States Naval Station, Treasure Island, San Francisco; his

"intentions" in absenting himself were listed as "unknown." On September 30 the accused was "declared an absentee" and a DD Form 553 (Absentee Wanted by the Armed Forces) was issued. The second exhibit consists of a lengthy entry dated August 2, 1956. The material part of that entry indicates that the accused was "apprehended in civilian clothing" in Portland, Oregon, by civilian police on July 25, 1956; that the accused said he was an "absentee from the U. S. Naval Station, Treasure Island . . . since 27 September 1954"; that he was "released" to military authorities in Portland the next day, and later transferred to the United States Naval Station at Seattle for "disciplinary action and disposition."[1] The defense presented no evidence. The law officer instructed the court on the elements of desertion, the presumption of innocence, the requirements of reasonable doubt, and the burden of proof. He also instructed the court that if it had "a reasonable doubt as to the degree of guilt, the finding must be in a lower degree as to which there is no reasonable doubt," but he gave no instructions on any lesser offense.

The Government maintains that we are bound to accept the law officer's appraisal of the evidence, unless it appears that he was clearly wrong. United States v Morphis, 7 USCMA 748, 23 CMR 212. From that premise it argues that since the law officer did not instruct on the lesser offense he obviously concluded that the evidence did not put any lesser offense in issue. The validity of this conclusion is questionable from a reading of the instructions themselves. If, as the Government argues, the law officer was convinced that no lesser offense was in issue, what meaning can be attributed to his instruction that if the court-martial had "a reasonable doubt as to the degree of guilt, the findings must be in a lower degree as to which there is no reasonable doubt"? See United States v Mason, 8 USCMA 329, 24 CMR 139. More important, however, is the evidence. There are at least two cir-

---

[1] We express no opinion on the admissibility of all the recitals in the second exhibit. See Bureau of Naval Personnel Manual, Articles C7804, C7807; United States v McNamara, 7 USCMA 575, 23 CMR 39.

cumstances which could be considered by the court-martial as tending to create a reasonable doubt that the accused entertained an intent to remain away permanently.

The manner in which an absence is terminated is one of the facts a court-martial may consider in determining the accused's intention to remain away permanently. See United States v Ferretti, 1 USCMA 323, 3 CMR 57; United States v McCrary, 1 USCMA 1, 1 CMR 1. Prosecution exhibit 2 recites that the accused was "apprehended" by civilian authorities. However, in apparent conformity with Navy regulations directing the recording of the "circumstances of return, whether surrendered or delivered" (see United States v Coates, 2 USCMA 625, 10 CMR 123), other matters were also set out. Among these is the notation that the accused stated he was an "absentee" from his unit at Treasure Island. No reason was given for the accused's apprehension. Although no reason need be stated (United States v Simone, 6 USCMA 146, 19 CMR 272), to determine the legal effect of the entry, we must consider it as a whole. So considered, it might reasonably be said that the accused "volunteered" the information that he was an absentee from the Navy. In United States v Nickaboine, 3 USCMA 152, 11 CMR 152, we held that a stipulation of testimony containing substantially the same information was insufficient to establish termination of an absence by apprehension. See also United States v Beninate, 4 USCMA 98, 15 CMR 98; United States v Crawford, 4 USCMA 701, 16 CMR 275. The second circumstance is the accused's characterization of himself as an "absentee" rather than as a "deserter." Implicit in the description is a denial of an intent to remain away permanently. In United States v Johnson, 3 USCMA 209, 11 CMR 209, we held that an extrajudicial statement by an accused which is admitted in evidence is sufficient by itself to raise an issue for consideration by the court-martial. In our opinion, therefore, there is sufficient evidence to put in issue the lesser offense of unauthorized absence as a reasonable alternative to the offense charged. United States v Swain, supra. Consequently, it was prejudicial error for the law officer to fail to instruct on the elements of that offense. United States v Hazard, 8 USCMA 530, 25 CMR 34.

The certified question is answered in the affirmative. The decision of the board of review is reversed, and the findings of guilty and the sentence are set aside. The record of trial is returned to The Judge Advocate General of the Navy for resubmission to the board of review. In its discretion, the board of review may order a rehearing or affirm findings of guilty of an unauthorized absence in violation of Article 86, Uniform Code of Military Justice, and reassess the sentence.

Judge FERGUSON concurs.

LATIMER, Judge (concurring in the result):

I concur in the result.

The majority opinion strains far too much to reach its result. Exemplary of this is the remarkable hypothetical case of an accused who could not do enough to insure his conviction on a desertion charge. When that imaginary man appears in a record on appeal, the world of fantasy will replace reality. Indeed, as one of Shakespeare's characters put it, "If this were played upon a stage now, I could condemn it as an improbable fiction."

Unfortunately, rather than the stage, we deal with the law, and the concepts advanced by the principal opinion will add to, rather than detract from, the difficulties of those persons who are charged with the responsibility of administering military justice. Without question, the facts which are used to support the principle that absence without leave is a reasonable alternative to the principal offense of desertion are indeed weak rods.

The first evidentiary item, a service record entry showing termination of absence by apprehension, is dealt with in a manner contrary to our holding in United States v Simone, 6 USCMA 146,

19 CMR 272. Unless we retreat from the position we took in that case, an official record showing apprehension proves that the return was involuntary. Certainly, United States v Nickaboine, 3 USCMA 152, 11 CMR 152, cited by the majority, does not modify that rule. But, even if the manner of return be considered as unknown, the uncertainty would not cast light on the intent of the accused.

The second fact is an admission by the accused to the effect that he was an absentee from the Navy. The Court finds from that fact some evidence of an intent to return because, had the accused intended to remain away permanently, he would have characterized himself as a deserter. That is faulty reasoning, for the word absentee is found in a service record entry and the admission was made at the time the accused was required to disclose his identity to a civil police officer. As I understand the word, it means one who is absent, and a deserter is in that class. Therefore, even if the word was used by the accused and not the recording official, I am unable to credit him with such a fine sense of discrimination in the use of terms that he knowingly divided the class. At best, I simply find from the entry that when apprehended the accused disclosed his status and not the intent with which he departed or remained away from his station.

With those few observations, I pass on to my reasons for concurring. In United States v McCrary, 1 ▆▆ ▪ USCMA 1, 1 CMR 1, I expressed my views in this field in the following language:

"The foregoing quotation merely announces common sense inferences any rational person would draw and in drawing them the time and space factors are influential. The longer the absence and the greater the distance from the unit the more reasonable the inference. The shorter the time and distance the less the inference is bottomed on reason. It is almost impossible to fix with certainty the minimum and maximum limits of these factors, but somewhere between the two is an area in which reasonable minds might differ. That area is one in which the members of the court-martial should be permitted to act without interference by this Court. Accordingly, if the facts in this case (and we believe they do) place the question of intent in the area where members of the court-martial or board of review could reasonably come to a different conclusion, then it becomes a question solely for their determination."

There is a remote possibility that all reasonable men might not from the facts in this record draw the inference that accused intended to remain away permanently. If so, then it can be argued that the law officer erred. However, it seems to me that under the doctrine of United States v Cothern, 8 USCMA 158, 23 CMR 382, and allied cases, and United States v Swain, 8 USCMA 387, 24 CMR 197, any discussion of that concept is purely academic. To say the least, the principle of inferring an intent to remain away permanently from prolonged absence superimposed upon apprehension or any other fact has been rendered so doubtful that reliance thereon is no longer justified. For that reason and to eliminate any further doubt and confusion about that question, the only sensible approach left to take is that absence without leave must be considered as an included offense to a charge of desertion in all instances unless the accused judicially confesses to an intent to remain away permanently. Being bound by the law as it is, I now take that position. However, if, after a plea of not guilty, a law officer should be confronted with a case in real life, in which the evidence is as strong as my brothers suggest in their suppositions—a contingency as remote as finding the fountain of youth —he might take a chance and limit findings to desertion.

Knowing that I express the views of one Judge only and that the principle I expound is not the law of the Court, I nevertheless believe that law officers will escape reversals if, in all future cases, they standardize their instructions by including absence without leave in all desertion charges.