UNITED STATES, Appellee

v

CHARLES MONTOYA, Private, U. S. Marine Corps, Appellant

15 USCMA 210, 35 CMR 182

No. 17,950

January 29, 1965

*Lieutenant John Thomas Montag*, USNR, argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Charles B. Sevier*, USMC, and *Lieutenant Thomas J. Hilligan*, USNR.

*Lieutenant Harvey M. Jame*, USNR, argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel D. E. Holben*, USMC.

## Opinion of the Court

FERGUSON, Judge:

Tried by a general court-martial convened by the Commanding General, Marine Corps Recruit Depot, San Diego, California, the accused was convicted of desertion terminated by apprehension, in violation of Uniform Code of Military Justice, Article 85, 10 USC § 885, and sentenced to dishonorable discharge, forfeiture of all pay and allowances, and confinement at hard labor for two years. The convening authority approved the sentence, and the board of review, reducing the period of confinement to eighteen months, affirmed. We granted accused's *pro forma* petition for review, specifying as the issue:

"Whether the evidence is legally sufficient to support termination of the period of desertion by apprehension."

The record reveals the prosecution established, by means of documentary evidence, that accused absented himself without leave from Parris Island, South Carolina, on August 15, 1961, and remained so absent until he was released to military control, on February 21, 1964, from the hands of civil authorities at Phoenix, Arizona. He was delivered under guard to the Marine Corps Recruit Depot, San Diego, California, on March 6, 1964. A deputy sheriff of Maricopa County, Arizona, testified that on February 12, 1964, he arrested the accused on a civil matter at the Greyhound Bus Depot, Phoenix, Arizona, and booked him at the Maricopa County Sheriff's Office. On the following day, accused was fingerprinted, and in the normal course of events, such fingerprints would be forwarded to the Federal bureau of Investigation for identification purposes. On March 24, 1964, long after accused had been returned to military control, the deputy was informed for the first time that Montoya had been an absentee from the Marine Corps.

Accused, testifying in his own behalf, alleged he had lived in Phoenix during his absence from duty, and expressly denied that he had at any time intended to remain away from the service permanently. His arrest by the deputy was for a misdemeanor, and, upon his trial, he pleaded guilty, "paid the man the money that I owed him, sir," and "they

**211**

suspended the sentence." As accused's release from jail was being effected, he "told this sheriff that took me down to —that day for trial that 'I think you had better call the FBI because I'm AWOL from the Marine Corps.'" Accused's revelation of his status was not "necessarily" due to the fact that he had been fingerprinted and knew that he would eventually be found out.

The termination of an unauthorized absence by apprehension, in a desertion case, permits the inference █ to be drawn that the accused's absence was characterized by the necessary intent to remain away permanently and also authorizes the imposition of an additional penalty. United States v Nickaboine, 3 USCMA 152, 11 CMR 152; United States v Krause, 8 USCMA 746, 25 CMR 250; United States v Williams, 9 USCMA 3, 25 CMR 265; Manual for Courts-Martial, United States, 1951, paragraph 127c. As such, therefore, it must "be (1) alleged in the specification, (2) covered by instructions, and (3) established as a part of the Government's case beyond a reasonable doubt." United States v Nickaboine, supra, at page 155.

As this Court has pointed out, the fact of apprehension may be established either by a showing that ██ the accused was taken into custody as an absentee from the armed services or, when arrested by civil authorities, his status is discovered " 'from someone other than . . . (the accused) or persons acting at his request' or from the accused 'as a result of a desire to avoid . . . criminal action at the hands of such civilian authorities.'" United States v Fields, 13 USCMA 193, 32 CMR 193, at page 197; United States v White, 3 USCMA 666, 14 CMR 84; United States v Nickaboine, supra. The evidence in this record, however, signally fails to demonstrate the existence of facts meeting these criteria.

First, there is no contention, nor could there be, that the accused was apprehended by the military authorities directly or by civil police officers on the basis of his status as an absentee from the Marine Corps. The record clearly indicates that Montoya was arrested by the deputy sheriff on a warrant charging him with a misdemeanor and that the deputy in fact did not become aware of his military status until long after the return to military control and consequent delivery to the authorities at San Diego. Moreover, the record also indicates that accused did not volunteer the information concerning his connection with the Marine Corps in order to escape prosecution for such civil offense. Rather, it was following his trial and the imposition of a suspended sentence that he, during the process of being released from custody, disclosed he was an absentee.

The situation presented, therefore, is akin to that before us in United States v Nickaboine, supra, wherein it was stipulated Nickaboine was arrested in connection with an automobile accident and during " 'the disposition of the case the accused *volunteered* the information that he was a member of the military service.'" Such, we held, "was insufficient evidence . . . to sustain the finding that the accused was apprehended by the civilian authorities." United States v Nickaboine, supra, at page 156. Here, where the proof shows only that the matter for which accused had been arrested had been disposed of, and that he thereafter voluntarily informed authorities he was absent without leave, there is even less justification for concluding apprehension to have been made out. We hold the proof insufficient in law to support that portion of the findings of guilty.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. The board of review may affirm findings of guilty of desertion terminated in a manner other than by apprehension, and reassess the sentence on the basis of such offense, or order a rehearing on the penalty.

Chief Judge QUINN and Judge KILDAY concur.