BAKER, Judge,
with whom CRAWFORD,
Judge, joins (concurring in result):
The question presented is whether Appellant pled providently to the charge of unauthorized absence terminated by apprehension. This Court will not overturn a plea as improvident unless there is a substantial basis in law or fact for doing so. United States v. Harris, 61 M.J. 391, 398 (C.A.A.F.2005). An appellant bears the burden of demonstrating that such a substantial basis in law *409 or fact exists. United States v. Hays, 62 M.J. 158, 167 (C.A.A.F.2005). I agree with the majority that Appellant has done so; however, I write separately to articulate why I believe this is a close case and to distinguish my understanding of the facts from that presented by the majority.
This Court’s ease law regarding apprehension emphasizes three factors in determining whether an unauthorized absence is terminated by apprehension or not: (1) was the return to military control voluntary?; (2) did the accused initiate his return to military control?; and (3) was the military control exercised over an accused a knowing control. United States v. Fields, 13 C.M.A. 193, 196-97, 32 C.M.R. 193, 196 (1962); United States v. Nickaboine, 3 C.M.A. 152, 156, 11 C.M.R. 152, 156 (1953). Depending on context, this Court has placed more or less weight on each factor.
In this case, Appellant argues that the military judge erred by accepting his plea to unauthorized absence terminated by apprehension because the record establishes that Appellant returned to military control voluntarily. At the very least, Appellant argues, the record contains inconsistent facts that warranted further inquiry before the military judge accepted Appellant’s statement. I agree with this latter argument, because there are just not enough facts in the record to fairly infer whether Appellant was apprehended or voluntarily surrendered.
In evaluating a plea, we look to the entire record, including any fair inferences that can be drawn from the record. United States v. Redlinski, 58 M.J. 117, 119 (C.A.A.F.2003). The record is factually light. Three of Appellant’s statements are relevant here:
A. I was notified by the dorm director that everyone was looking for me, and I immediately told him that I needed to get dressed and meet him in the front. And when I did that, he said that he would call the Shirt to come down and pick me up, and they did so.
Q. What happened after that?
A. I went down and went in front of Colonel Kramer, and he read me my rights, and I was put on base restriction and dorm restriction.
A. ... I remained absent in my dorm room until 17 January 2003, when the dorm manager came to my room and told me that my squadron was looking for me. I am confident that my absence was terminated by apprehension because neither me, nor anyone working on my behalf, voluntarily told anyone where I was. I was found when the squadron came looking for me.
On the one hand, based on these statements, the military judge might well have concluded that Appellant’s apprehension was involuntary because it was initiated by the dorm director who had reason to know that Appellant was absent from his place of duty. Otherwise, the dorm director would not have indicated that he or she would call the First Sergeant to pick Appellant up. One might well infer that a dorm director, whatever his status or rank, would not expect the First Sergeant to come and give the Appellant a ride to work, unless the Appellant were in trouble. This reading of the record is supported by our case law emphasizing “initiation” as determinative of apprehension. See Fields, 13 C.M.A. at 196-97, 32 C.M.R. at 196. It is also supported by Appellant’s statement to the military judge that “I am confident that my absence was terminated by apprehension” and Appellant’s acknowledgment that the First Sergeant picked him up at the dorm.
On the other hand, one might also reasonably infer from these same statements that Appellant voluntarily surrendered to military control. Having been tipped off by the dorm director that his command was looking for him, Appellant decided to get dressed and asked the dorm director to meet him in the front. One might infer that Appellant exercised a voluntary choice, for Appellant might also have gotten dressed and headed out the backdoor. Or, he might have bought more time with the dorm director by expressing surprise, thanking him for the information, and then advising the dorm director that he *410 would find his own way to the unit before making his way to the front gate.
Fair inferences can be drawn in either direction. One or two more questions might have resolved this apparent inconsistency between the initiation of Appellant’s surrender and his voluntary arrival at the front door of his dorm. For example, did the Appellant think he had a choice when the dorm director arrived? Did the dorm director have the authority to apprehend Appellant if need be? How much time elapsed between the dorm director’s arrival and the First Sergeant’s? In light of these uncertainties, there is a substantial basis in law as well as in fact to question the plea to apprehension. Nonetheless, for the reasons stated by the majority, the error is harmless and I concur in the result.