UNITED STATES, Appellant

v.

ARLIN A. SALTER, Private E–1, U. S. Army, Appellee

4 USCMA 338, 15 CMR 338

LT COL William R. Ward, U. S. Army, and 1ST LT Roderick V. Brown, U. S. Army, for Appellant.

LT COL James C. Hamilton, U. S. Army, 1ST LT Paul Berger, U. S. Army, and CAPT Glade F. Flake, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

The accused was found guilty of two desertions, the first covering a period from December 1, 1952, to April 1, 1953, and the other a subsequent period from May 18, 1953, until August 15, 1953, both in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679. The first finding included the aggravating ingredient of termination by apprehension. Accused was sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for three years. The convening authority approved the sentence and the record of trial was forwarded to The Judge Advocate General of the Army for review by a board of review. That reviewing agency affirmed only so much of the findings under the first specification as found the accused guilty of desertion terminated in a manner unknown. The modified findings required a reduction in the period of confinement from three years to two years. The Judge Advocate General of the Army certified the record to this Court to have us consider whether the board of review erred in finding, as a matter of law, that the Government had not established apprehension as the method by which the absence was terminated.

After proving properly the first period of absence the Government introduced the following stipulation into evidence:

"With the consent of the accused the prosecution and the defense stipulate that the accused, Private Arlin A. Salter, was apprehended by Texas civil authorities on 10 April 1953, at Bennett, Texas."

The content of that stipulation, with one exception to be hereinafter mentioned, is substantially the same as the one introduced by the Government in United States v. Beninate, 4 USCMA 98, 15 CMR 98, and the rule we announced in that case disposes of the issue. The stipulation there was as follows:

"'It is hereby stipulated and agreed by and between Trial Counsel, Defense Counsel, and the accused, Pvt E–1 Angelo Beninate, with the consent of the accused, that if Detective Mark Ruckell, #0431, of the Kansas City, Missouri Police Department were present in court and sworn as a witness, he would testify in substance as follows:

That I apprehended the accused, Private E–1 Angelo Beninate, on 16 May 1953, at Kansas City, Missouri.'"

In that case the Chief Judge, speaking for the Court, laid out the following principles:

"Stipulations should be so construed as to give effect to the intention of the parties. United States v. Cambridge, 3 USCMA 377, 12 CMR 133. However, if a stipulation is completely silent on material facts a court cannot, in the guise of construction, supply the omissions. The writing must contain something to con-

**339**

strue. Here, there is nothing. On the basis of the evidence contained in the record of trial, only speculation can supply information as to the nature, the purpose, and the result of the apprehension by Detective Ruckell. It would not be unreasonable to assume that Detective Ruckell apprehended the accused under circumstances similar to those in United States v. Nickaboine, supra, where we held the evidence to be legally insufficient to support a finding of an involuntary return. Neither is it unreasonable to suppose, in the absence of evidence to the contrary, that the accused was freed by the civilian authorities and thereafter voluntarily surrendered himself to the military."

The Government seeks to escape the effect of that decision by contending that the stipulation in the instant case was a stipulation of fact, while the one in the former case was a stipulation as to expected testimony. In essence, counsel argue the accused judicially admitted being apprehended as an absentee. We need not discuss extensively the distinction pressed on us by the Government because, for the purposes of this case only, we will assume that the accused conceded he was apprehended by Texas authorities. He did not, however, plead guilty to desertion terminated by apprehension and there is not one fact or circumstance, or a combination of them, which establishes that his return to the service was involuntary. It may be that had he pleaded guilty to a specification containing merely an allegation of apprehension he could not now contend that the aggravated ingredient was not established. Under those circumstances, we could hold reasonably that apprehension was by the military authorities or for military purposes only. But that construction of the stipulation is foreclosed by its wording which shows apprehension by civilian authorities. Those authorities are authorized to apprehend for violations of state or local laws, and the court-martial and the board of review were, and this Court is, without information as to the reason why the accused was taken into custody by them. It is not unreasonable to assume that it may have been for a violation of their own criminal code. Certainly, this record is devoid of any evidence to the contrary.

In this case we can pointedly show the hiatus in the proof. The morning report entry shows return to military control on April 13, 1953. The stipulation shows custody by Texas authorities three days earlier. There are at least three probable hypotheses which immediately come to mind to account for accused's return. Firstly, he could have been apprehended by civil authorities for the military, held for three days, and then returned involuntarily to service control. Secondly, he might have been apprehended for a violation of a state law, freed three days later by the civilian authorities without prosecution, and then returned to his unit through his own efforts. Thirdly, he could have been apprehended for a minor traffic violation (for example), not held, and voluntarily requested the civilian agency to effect his return to the service. While the first method of return may be more frequent, that does not imply that reasonable minds could not infer return by one of the other two methods. The duty is on the Government to establish beyond a reasonable doubt that accused's return was involuntary, and it has failed to carry that burden.

The action taken by The Judge Advocate General of the Army to certify the case to this Court was prior to our decision in United States v. Beninate, supra. While at the time of certification the law had not been firmly settled, our decision in that case, reaffirmed by this holding, should remove any doubt about the insufficiency of a stipulation containing no more information than the one which presently confronts us. As counsel for the Government contend, we attempt to give effect to the intention of the parties, but there is no good reason made apparent to us why a stipulation cannot contain sufficient facts to disclose more completely what was intended. Certainly, it is placing no additional burden on the Government to include in the stipulation sufficient facts to show involuntary return. If stipulations cannot be

340

obtained which will be complete enough for a court-martial to make that determination without indulging in surmise, speculation, and conjecture, then some other method of proving the necessary facts should be used.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge BROSMAN concur.