# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS
## Washington, DC

## UNITED STATES
### v.

## Michael R. FRANCHINO
### Boatswain s Mate Third Class, U.S. Coast Guard

### CGCMS 24121
### Docket No. 1072
### 25 August 1998

Special Court-Martial convened by Commanding Officer, USCGC Neah Bay (WTGB 105). Tried at Cleveland, Ohio, on 28-29 February 1996.

| | |
|---|---|
| Military Judge | CDR Stephen Darmody, USCG |
| Trial Counsel | LT Charles D. Dahill, USCG |
| Detailed Defense Counsel | LT Matthew S. Gabe, JAGC, USNR |
| Appellate Defense Counsel | LT Richard R. Beyer, USCGR |
| Appellate Defense Counsel | LT William G. Rospars, USCG |
| Appellate Government Counsel | LT Frank R. Levi, USCGR |

### BEFORE
### PANEL TWO
### BAUM, KANTOR, AND McCLELLAND
Appellate Military Judges

McCLELLAND, Judge:

Appellant was tried by a special court-martial before a military judge alone. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of the following offenses: one specification of unauthorized absence terminated by apprehension, one specification of failure to obey a lawful general order, one specification of making a false official statement, forty specifications of larceny of Government monies, and one specification of wrongful use of cocaine, in violation of Articles 86, 92, 107, 121, and 112a of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§886, 892, 907, 921, and 912a, respectively. The judge sentenced appellant to a reduction to pay grade E-1, forfeiture of $490.00 pay per month for three months, a fine of $2,000.00, confinement for six months, and a bad conduct discharge. The convening authority approved the sentence as adjudged, except that, pursuant to a pretrial agreement, he suspended confinement in excess of the 82 days already served in pretrial confinement.

Five errors were initially assigned by Appellant, causing the record to be returned to the convening authority for corrective action. The convening authority issued a new Action and a new court-martial order. Upon re-referral of the record to the Court, Appellant withdrew four of the assigned errors. Thereafter, the Court ordered supplemental briefing of three specified issues and an explanation concerning the one remaining assigned error. In response, Appellant withdrew his assigned error and filed three supplemental errors which have also been orally argued. Those argued errors are: (1) that the plea-providence inquiry is insufficient to establish unauthorized absence terminated by apprehension; (2) that, with respect to the larceny specifications, Appellant s answers during the plea-providence inquiry do not establish the taking element; and (3) that the convening authority s action suspending a portion of the confinement is ambiguous with respect to when the suspension ends and legally incorrect with respect to disposition after successful completion of probation.

## PROVIDENCE OF UNAUTHORIZED ABSENCE PLEA

Appellant contends that although the finding of guilty of unauthorized absence is proper, his guilt of termination by apprehension cannot be sustained. The Government does not oppose that contention, but calls the element of termination by apprehension "mere surplusage" and asserts that "the finding of guilt on this superfluous element had no effect in determining Appellant s sentence." Government s Answer Brief of February 9, 1998, p.6.

During the providence inquiry, Appellant stated that his absence ended when he was apprehended by the Cleveland police on a Cleveland street; that the police took him to their 3rd District, where he remained for about twelve hours, at which time the Coast Guard came and picked him up. Record at 37-38. Both counsel objected to the Military Judge s questions concerning why he was apprehended and whether the Cleveland police knew he was absent without leave, and the Military Judge did not press those questions further. The only other information on the subject was provided by trial counsel, who stated, "Once the Cleveland police understood that he was absent without leave from the Coast Guard, they contacted the Coast Guard and the Coast Guard immediately indicated that we wanted to take custody and control of him." Record at 40.

It has long been settled law that "apprehension" by civilian authorities does not establish "apprehension" within the meaning of the military law of unauthorized absence, unless additional facts are established. *U. S. v. Salter*, 4 U.S.C.M.A. 338, 15 C.M.R 338 (1954); *U.S. v. Ansell*, 16 C.M.R 450 (C.G.B.R. 1954). Where termination by apprehension is alleged, in addition to apprehension by civilian authorities it must be shown that the accused was not the source of the information that he was a military absentee, or, if he was the source, that he revealed the information to avoid civilian prosecution. This is an essential part of the element of termination by apprehension.

In the context of a guilty plea, this element, like all the others, is to be established through the military judge s inquiry of the accused. *U.S. v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1977); *U.S. v. Faircloth*, 45 M. J. 172, 174 (1996). *See* R.C.M. 910 (e) Discussion ("Ordinarily, the elements should be explained to the accused."). Here, that did not occur. Indeed, the trial counsel s statement suggested that the accused may

have been the source of the information, which, if true, would certainly require further inquiry. Accordingly, the providence inquiry is inadequate to sustain the finding of guilt of termination by apprehension. We therefore must set aside that portion of the specification.

The question of sentence relief follows. We do not agree with the Government that the apprehension element is "mere surplusage" and we cannot say that it could not have affected the sentence. That it does not increase the maximum sentence is not determinative. All other things being equal, termination of an unauthorized absence by apprehension almost always warrants a more severe sentence than voluntary termination, even if the increment is small. We must therefore determine whether the sentence would have been different absent the apprehension element. *See U.S. v. Sales*, 22 M.J. 305 (C.M.A. 1986); *U.S. v. Puckett*, 32 M.J. 783 (C.G.C.M.R 1991), *pet. denied* 34 M.J. 15 (C.M.A. 1991). We will do so after considering the other issues.

## PROVIDENCE OF LARCENY PLEA

Appellant contends that the findings of guilty of larceny under Charge IV are defective because during the providence inquiry the accused never admitted to a taking.

Appellant pled guilty to 40 specifications of larceny, each of which was in the following form:

> In that BM3 Michael R. Franchino, USCG, did, on active duty, at [business
> establishment] in or near the city of _____, Ohio, on or about [date], steal
> money
> of a value of about $____, the property of the U. S. Government, by
> wrongfully
> using a government credit card to purchase [merchandise] for his own use.

During the providence inquiry, for each specification Appellant admitted to facts amounting to obtaining merchandise by means of the false pretense of paying with a credit card he had no authority to use for that transaction, effectively representing that he did have such authority. For each specification, he admitted that the merchandise was owned by and obtained from the business establishment specified, and that the merchandise had the value specified. For each specification, he admitted that he intended to deprive the owner of the merchandise permanently, with one exception: for specification 2, he admitted that he intended to deprive the owner of the merchandise temporarily. For all except two specifications, he also admitted that he intended for the Coast Guard to pay the bill and for himself not to ever pay anything. Further, in a stipulation of fact, Appellant admitted that between dates covering all the larceny specifications, he "wrongfully stole money which was the property of the U. S. Government, by wrongfully using a government credit card to purchase merchandise and gasoline for my personal use. I intended to permanently deprive the Government of this property, the money." Prosecution Exhibit 1.

However, Appellant never admitted facts amounting to a taking, obtaining or withholding of money from the *Government*, as charged. That is, he never admitted that money, or any other property, left the hands of the Government. In fact, when the Military Judge asked whether the Coast Guard ever paid the bill,

Appellant said he didn t know, at which point, the trial counsel volunteered that the Government had paid all the charges that Appellant had made. Record at 56. The most that Appellant could say was, "My intent was for the Coast Guard to pay the bills[,] that I had purchased these items and that the Coast Guard would pay for them." Record at 57. The stipulation of fact sheds no light on the matter.

As with the previous issue of termination of unauthorized absence by apprehension, the element of taking is to be established through the military judge s inquiry of the accused during the providence inquiry, *Davenport* and *Faircloth*, supra; R.C.M. 910(e) Discussion, quoted with approval in *Faircloth*, 45 M.J. at 174. Comments by the trial counsel establish nothing. Here, the providence inquiry did not establish a taking of money from the Government, but it did establish the intent to take from the government, and it also established obtainings of merchandise from business establishments. Appellant concedes that this court could, for each specification, affirm a finding of guilty of attempted larceny of the money from the Government, a lesser offense included within the charged offense of larceny of money from the Government. Appellee contends that we could, for each specification, affirm a finding of guilty of the "closely related" offense of larceny of the merchandise from the business establishment -- with one exception: for specification 2, we could affirm a finding of guilty of wrongful appropriation of the merchandise, of some value. It does appear from the record that the Military Judge took great pains to establish the providence of both attempted larceny from the Government and larceny of merchandise from the business establishments.

We may find a plea of guilty provident if the providence inquiry supports an offense "closely related" to the offense to which an accused has pled guilty. *U.S. v. Felty*, 12 M.J. 438, 442 (C.M.A. 1982); *U.S. v. Epps*, 25 M.J. 319, 323 (C.M.A. 1987); *U.S. v. Cooper-Tyson*, 37 M.J. 481 (C.M.A. 1993); *U.S. v. Pritchard*, 45 M.J. 126, 129 (1996). Thus, the question is whether larceny by government credit card of merchandise, property of a business establishment and obtained from that business establishment, is "closely related" to larceny by government credit card of money, property of the Government and taken from the Government.

In *Felty*, the accused pled guilty to escape from custody, but the facts supported escape from confinement. The Court of Military Appeals noted that both offenses were found in the same clause of the same article of the UCMJ; they had the same maximum punishment; the gravamen of the offense was the same for both. Perhaps most importantly, changing the offense from escape from custody to escape from confinement did not mislead the defense in preparing for trial, and a finding of guilty would protect the accused from another prosecution for the same offense. The Court found a closely related offense, and affirmed.

In *Pritchard*, another guilty plea case, the question was whether the facts conformed to the terms of the specification. The Court of Appeals for the Armed Forces analyzed the case in several ways, including a "closely related" approach, and also quoted *U.S. v. Sells*, 11 C.M.R. 202 (C.M.A. 1953). We think the *Sells* principles apply here:

> The true test of the sufficiency of an indictment is ) whether it contains the
> elements of the offense ), and sufficiently apprises the defendant of what he

must be prepared to meet; and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction [; and whether] the necessary facts appear in any form or by fair construction can be found within the terms of the specification.

*Sells* at 206.

In this case, we note that each specification gives notice of the merchandise stolen and business establishment whose property it was, although that relationship is not stated. Applying the *Sells* principles, we find that the larcenies of merchandise, which are fully supported by the providence inquiry, are closely related to the charged larcenies of money from the Government. The analysis is strengthened by the fact that all of the factors listed in *Felty* are also present here.

Specification 2 is different. As noted above, for specification 2, Appellant admitted that he intended to deprive the owner of the merchandise temporarily. That is, he admitted to wrongful appropriation of the merchandise. This is plainly a lesser offense than the charged larceny of the money, so it cannot be said that the plea of guilty to this specification was provident. Of course, we may approve a finding of guilty of a lesser included offense. *U.S. v Pillow*, 28 M.J. 1008 (C.G.C.M.R 1989). Is it permissible to combine such a reduction of the offense with a "closely related" analysis? We think it is. *U.S. v. Hoskins*, 29 M.J. 402, 405 (C.M.A. 1990). Accordingly, for specification 2, we will affirm a finding of guilty of wrongful appropriation of merchandise. Although Appellee says the amount specified was not the value of that merchandise, Appellant admitted that the merchandise was worth $72.13, the amount specified. Record at 56. Common sense suggests that the rental cost (the amount alleged as having been stolen from the government) was no more than the full value of the merchandise, confirming that there is no need to belabor the element of value.

We will reform the specifications of Charge IV to conform with the providence inquiry.

## TERMS OF SUSPENSION OF CONFINEMENT

Appellant argues that the portion of confinement suspended by the convening authority should be set aside because the period of suspension was unreasonable and should have passed by now. Appellee, without conceding error, encourages us to approve a suspension period of eighteen months from the date sentence was adjudged, which has long since run.

The revised Action of the Convening Authority reads, in pertinent part:

> [T]he sentence is approved, except for the Bad Conduct Discharge, and will be executed. The Bad Conduct Discharge is subject to review by the appellate courts and shall not be executed until the case is final. Adjudged confinement in excess of the 82 days already served in pretrial confinement is suspended according to the terms of the pretrial agreement. If no misconduct

occurs during appellate leave, confinement beyond the 82 days already served in pretrial confinement will be disapproved. If misconduct does occur during the period of appellate leave, an Article 72, UCMJ, hearing shall be convened to determine if the suspended confinement will be vacated. If the determination is made at the Article 72, UCMJ, hearing that the suspended confinement is to be vacated, the sentence to adjudged confinement will be approved and executed.

The Pretrial Agreement reads, in pertinent part:

If the military judge adjudges a punitive discharge and confinement in excess of time served, the accused will immediately submit a written request for voluntary appellate leave. The Convening Authority will *immediately* approve this request and *suspend* adjudged confinement. During this period of suspended adjudged confinement, the accused will be in voluntary appellate leave status. Misconduct by the accused during this period of suspended adjudged confinement will *automatically revoke* suspended adjudged confinement and the accused will be promptly returned to the brig to serve the entire period of adjudged confinement. If misconduct does not occur during the period of suspended adjudged confinement, the Convening Authority will disapprove the adjudged confinement when taking *final action* and approve only confinement reflecting time served prior to trial. The accused will be in required appellate leave status following final action by the convening authority if the convening authority approves a punitive discharge when taking final action.

(Emphasis added)

We agree that the Convening Authority s Action is defective in several respects. Article 5-G-1 of the Coast Guard Military Justice Manual (COMDTINST 5810.1C) refers the convening authority to the forms in Appendix 16 of the Manual for Courts-Martial. Unfortunately, in this case, the drafter of the Convening Authority s Action followed neither that guidance nor the guidance in Article 5-E-1 of the Military Justice Manual concerning the appropriate length of a suspension. Instead of stating the period of suspension, the Action simply refers to the poorly drafted Pretrial Agreement, which, among other things, does not explicitly state a period of suspension.

The italicized words in the Pretrial Agreement extract above appear to have been used without regard to the vocabulary of the UCMJ and Manual for Courts-Martial. Suspension cannot occur until the Convening Authority receives the authenticated record and acts on it; suspension is only available for an approved sentence. R.C.M. 1108(a). In the absence of deferment or suspension, adjudged confinement runs regardless of whether the accused is actually confined. Article 57(b), UCMJ. Neither deferment nor suspension of confinement is "revoked." Deferment can be rescinded, R.C.M. 1101(c)(7), and suspension can be vacated, R.C.M. 1109, but neither can occur automatically. In the absence of deferment or

suspension, in the event of misconduct the accused could be summarily confined in accordance with the sentence, but only as long as a part of the sentence remained, not for "the entire period of adjudged confinement." The word "final" is not usually used in conjunction with Convening Authority Action, an event that ordinarily occurs only at the beginning of the review process; hence its use here is ambiguous.[2]

Further, after Convening Authority Action, cancellation of a suspended sentence occurs by remission, which the Convening Authority and some other authorities have the power to do positively, and which occurs automatically by passage of time unless the suspension is sooner vacated. R.C.M. 1108(b), (e). There is no need for resort to the kind of "springing disapproval" set forth in the Action of the Convening Authority in this case.

The sentence in this case was adjudged on 19 February 1996. It included six months of confinement. Eighty-two days of pretrial confinement must be credited against the sentence. There is no indication in the record that deferment of the sentence was requested or granted. The convening authority originally acted on the record on 1 July 1996. At that time, the entire sentence to confinement had run; there was nothing left to suspend.

Even if there were something left to suspend , the parties agree that the period of suspension should have run by now, and we agree. The Action provides that if no misconduct occurs during the period of suspension, "confinement beyond the 82 days already served in pretrial confinement will be disapproved." Accordingly, we will set aside the portion of the adjudged confinement ostensibly suspended by the Convening Authority.

## REASSESSMENT OF SENTENCE

Having set aside the finding that termination of the unauthorized absence was by apprehension and having converted one larceny specification to wrongful appropriation, we now reassess the sentence. We are to affirm only so much of the sentence as we believe the trial judge would have adjudged in the absence of the errors we are now correcting; if we are unable to determine what that would have been, we must order a re-hearing on sentence. *U.S. v. Sales,* supra.

We find the changes in the findings inconsequential in their impact on the sentence. The factual circumstances of the 39 larceny specifications have not changed. The circumstances surrounding the wrongful appropriation, which may properly be considered on sentencing, are the same as at trial, including that Appellant intended for the Government to lose the same amount of money he was found at trial to have stolen. Next to these and the other offenses of which Appellant has been found guilty, including one violation each of Articles 92, 107, and 112a, how the unauthorized absence was terminated is insignificant. With due regard for the jurisdictional cap on the sentence at Special Court-martial, we have no doubt whatsoever that the trial judge would have adjudged the same sentence.

We have reviewed the entire record and exercised our Article 66 responsibility. With the exceptions that follow, we conclude that the findings are correct in law and fact and we affirm them. In the specification of Charge I, we set aside the finding of guilty of the words "he was apprehended". In specification 2 of

Charge IV, we affirm a finding of guilty of the lesser included offense of wrongful appropriation of clothing or clothing accessories, the property of American Commodore Tux. In each of specifications 3 through 41 of Charge IV, we affirm a finding of guilty of larceny of merchandise or gasoline (in the terms set forth in the specification as found guilty by the trial court), property of the business establishment mentioned in the specification. We affirm only so much of the sentence as provides for reduction to pay grade E-1, forfeiture of $490.00 pay per month for three months, a fine of $2,000.00, confinement for 82 days, and a bad conduct discharge.

Chief Judge BAUM and Judge KANTOR concur.

For the Court,

//s//

Brian A. Johnson
Clerk of the Court