**UNITED STATES**

v.

**Jeffrey H. WOODSON, Quartermaster
First Class (E–6), U.S. Coast
Guard.**

**CGCMS 24167.
Docket No. 1114.**

U.S. Coast Guard Court of
Criminal Appeals.

4 Feb. 2000.

Trial Counsel: LCDR Kent L. Booher,
USCGR.

Assistant Trial Counsel: CDR Mark Te-
lich, USCGR.

Detailed Defense Counsel: LT Arthur
Blum, JAGC, USNR.

Appellate Defense Counsel: LT Sandra K.
Selman, USCGR.

Appellate Government Counsel: LTJG
Mark A. Cunningham, USCGR.

Before Panel Two BAUM, Chief Judge,
KANTOR, and McCLELLAND, Appellate
Military Judges.

McCLELLAND, Judge:

Appellant was tried by a special court-martial before a military judge sitting without members. Pursuant to his pleas of guilty, entered in accordance with a pretrial agreement, he was convicted of the following offenses: eight specifications of larceny, and six specifications of forgery, in violation of Articles 121 and 123 of the Uniform Code of Military Justice (UCMJ), 10 USC §§ 921 and 923, respectively. The judge sentenced appellant to a Bad–Conduct Discharge, confinement for 60 days, forfeiture of $639.00 pay per month for two months, and reduction to pay grade E–1. Pursuant to the terms of the pretrial agreement, the convening authority approved only the Bad–Conduct Discharge and disapproved the remainder of the sentence.

Before this Court, without admitting that the findings and sentence are correct in law and fact, Appellant has submitted this case on its merits as to any and all errors. We deem the case worthy of some explication.

Appellant stole the wallet and driver's license of SK1 Todd Meekins, his former roommate. This was the subject of Specification 1 of Charge I. On several occasions, he presented the driver's license and signed SK1 Meekins' name on applications for credit at various retail stores in order to acquire merchandise using that credit for Appellant's own benefit. Specifications 2 through 8 of Charge I allege larceny of the merchandise so acquired. The six specifications of Charge II allege forgery in the signing of SK1 Meekins' name on the credit applications.

During the providence inquiry, the military judge was initially nonplussed to learn that Appellant intended to pay for the merchandise. Indeed, he apparently did make payments on some or all of the accounts he had opened in SK1 Meekins' name. The military judge requested counsel to present argument addressing this situation. After some research, both counsel agreed that the facts were similar to *U.S. v. Christy*, 18 M.J. 688 (NMCMR 1984), where the court found larceny by false pretenses in violation of Article 121. Appellant in that case used a government credit card to buy gasoline for personal use, and was charged with larceny of money; the court opined that larceny of either money or gasoline would be proper charges. The military judge in our case, with the concurrence of both counsel, eventually accepted the theory that Appellant "committed larceny by taking [obtaining] something of value from a store, that he could not have gotten by means other than a falsified credit application."

In the course of the colloquy, both counsel seemed to feel that the law is not as clear as it might be for fact patterns like that in this case. We are mindful that the case of *U.S. v. Franchino*, 48 M.J. 875 (C.G.Ct.Crim.App. 1998), likewise revealed some confusion on the part of judge or counsel concerning how to apply Article 121 of the UCMJ when credit cards are misused. It may therefore be useful to analyze this case in some detail.

We begin with the elements of larceny, as stated in ¶ 46b(1) of the Manual for Courts–Martial (1998) [1] (MCM).

(a) That the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;

(b) That the property belonged to a certain person; That the property was of a certain value, or of some value; and

(c) That the taking, obtaining, or withholding by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of the property or permanently to appropriate the property for the use of the accused or for any person other than the owner.

As ¶ 46c(1)(d) says, "The taking, obtaining, or withholding of the property must be wrongful. As a general rule, a taking or withholding of property from the possession of another is wrongful if done without the consent of the other, and an obtaining of property from the possession of another is wrongful if the obtaining is by false pretense." Further, ¶ 46c(1)(e) tells us, "A false pretense is a false representation of past or existing fact. . . . Although the pretense

---

1. The quoted excerpts have not changed since the Manual for Courts–Martial (1984).

need not be the sole cause inducing the owner to part with the property, it must be an effective and intentional cause of the obtaining."

■ From the foregoing, we may now restate the elements of Article 121 Larceny, in stripped-down terms that fit the fact situation:

(a) That the accused obtained certain property from the possession of the owner or of any other person, by making a false representation of fact that was an effective and intentional cause of the obtaining, even if not the sole cause;

(b) That the property belonged to a certain person;

(c) That the property was of a certain value, or of some value; and

(d) That the obtaining by the accused was with the intent permanently to deprive or defraud another person of the use and benefit of the property.

To foreclose misunderstanding, one more term should be defined. *"Intent to defraud* means an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." Black's Law Dictionary 381 (5th Ed.1979).

In this case, the accused admitted that he obtained various property (merchandise) from various merchants by representing himself as Todd Meekins, thereby inducing the merchants to sell him the merchandise on credit. He also related that one of the merchants, based upon an initial transaction of the type just described, sent him a credit card in the name of Todd Meekins, which he later used to obtain more merchandise on credit, representing himself to be Todd Meekins and authorized to use the credit card. He further admitted that he intended to keep all the merchandise permanently; and he admitted the other two elements as to all the merchandise.

■ Scrutiny of the elements reveals that larceny requires neither intent to deprive anyone of value nor actual deprivation of value. In other words, the owner's loss of the specified property, and the intent to that end, are at issue, regardless of whether the property is paid for or intended to be paid for. Thus, larceny is a proper charge even if Appellant had both intended to and did pay off the accounts. *Accord, U.S. v. Christy,* 18 M.J. 688, 690 (NMCMR 1984) ("It is of no moment that the various retailers did not suffer an actual pecuniary loss.").

■ Accordingly, we ratify the military judge's decision to accept Appellant's pleas of guilty to the larceny-of-merchandise offenses despite Appellant's stated intention to pay for the items. With offenses such as these, where the obtaining of the property is by false pretenses, i.e., by the use of credit that has been granted on the basis of false pretenses, the larceny is completed upon the obtaining of the merchandise with the intent to keep it permanently. It makes no difference that the accused intended to pay for the items at the time or, in fact, ultimately did pay for them. The plea of guilty is provident nevertheless.

■ We now turn to Charge II, Forgery. We hold that the specifications under Charge II are inadequate to state an offense.

The six forgery specifications, to which appellant pled guilty and of which he was found guilty, read as follows:

In that QM1 Jeffery H. Woodson, USCG, on active duty, did on or about [date], with intent to defraud, falsely make the signature of SK1 Todd Meekins, USCG to a credit application in the name of Todd Meekins for credit with [creditor]; said signature would, if genuine, apparently operate to the legal harm of Todd Meekins and which was used to the legal harm of Todd Meekins, in that the creditor expected payment from Todd Meekins pursuant to the finance agreement, Todd Meekins' credit record was damaged and he was denied credit because of that damaged credit record.

The ostensible legal harm envisioned by this specification is the denial of credit to Todd Meekins. But that is not *legal* harm. It does not impose a *legal* liability or change *legal* rights or liabilities. The denial of cred-

it was a decision by a potential creditor—a practical consequence of the writing and ensuing default, perhaps, but not one effected by law. Likewise, damage to a credit record is not a *legal* consequence.

Putting aside the apparent intention of the specification, perhaps the words "in that the creditor expected payment from Todd Meekins pursuant to the finance agreement" can be read to mean "in that Todd Meekins apparently became liable for payment pursuant to the finance agreement". On the face of it, this would mean only that the finance agreement had legal efficacy; but Appellant is accused of forging a credit application, not a finance agreement. There is nothing in the providence inquiry to suggest that the credit application and the finance agreement were the same thing for any of the specifications.[2]

*U.S. v. Hopwood,* 30 M.J. 146 (CMA 1990), teaches that a credit application itself is not susceptible of forgery under the UCMJ. The court held that although the credit application in that case was "a preliminary—and probably necessary—step towards a purchaser's entry into a transaction that would appear to create legal rights and liabilities", it "could not be 'forged' in violation of Article 123 because, even when considered in light of companion documents and the intended purchase transaction, the application itself, if genuine, would not create any legal right or liability on the part of the purported makers." *Hopwood,* 30 M.J. at 148. (It is worth noting that in *Hopwood,* three companion documents—a retail installment sales contract; a purchase order; and an agreement concerning insurance—were the subjects of forgery specifications that survived appellate review.)

In light of the military judge's ruling that those specifications "are multiplicious for sentencing to the [other] specifications" of which appellant was found guilty, this would make no difference to the sentence.

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings of guilty of Charge II,

the forgery charge, and its six specifications are set aside, and the charge and its specifications are dismissed. We have determined that the remaining findings and the sentence are correct in law and fact and on the basis of the entire record should be approved. Accordingly, the findings of guilty of Charge I and its Specifications 1 through 8, and the sentence, as approved below, are affirmed.

Chief Judge BAUM and Judge KANTOR concur.

---

2. One could argue whether a finance agreement, which might impose liability only contingent upon a separate actual extension of credit, is sufficient to support a charge of forgery. One would not likely entertain such an argument in a guilty plea case, as long as the accused admitted legal efficacy of the finance agreement.