UNITED STATES, Appellee

v.

Jamahl D. Gaston, Senior Airman
U.S. Air Force, Appellant

No. 05-0462

Crim. App. No. S30372

United States Court of Appeals for the Armed Forces

Argued December 7, 2005

Decided March 3, 2006

ERDMANN, J., delivered the opinion of the court, in which
GIERKE, C.J., and EFFRON, J., joined.  BAKER, J., filed a
separate opinion concurring in the result, in which CRAWFORD,
J., joined.

Counsel

For Appellant:  Captain Kimberly A. Quedensley (argued);
Lieutenant Colonel Mark R. Strickland (on brief); Colonel Carlos
L. McDade, Major Sandra K. Whittington, and Major James M.
Winner.

For Appellee:  Captain Jefferson E. McBride (argued); Lieutenant
Colonel Robert V. Combs and Lieutenant Colonel Gary F. Spencer
(on brief); Major John C. Johnson.

Military Judge:  Daryl E. Trawick

**This opinion is subject to revision before final publication.**

United States v. Gaston, No. 05-0462/AF

Judge ERDMANN delivered the opinion of the court.

Senior Airman Jamahl D. Gaston was charged with absence without leave terminated by apprehension and missing a movement by design in violation of Articles 86 and 87, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 887 (2000). He pled guilty and was convicted on both charges before a military judge at a special court-martial. He was sentenced to a bad-conduct discharge, confinement for six months, a reduction in grade to E-1, and partial forfeitures. Because the military judge failed to inform Gaston that a reduction to E-1 was a possible punishment in the case, the convening authority did not approve the reduction but approved the remainder of the sentence as adjudged. The Air Force Court of Criminal Appeals affirmed the findings and sentence with a single modification which addressed the forfeitures. United States v. Gaston, No. ACM S30372 (A.F. Ct. Crim. App. Mar. 7, 2005).

This court will set aside a plea of guilty where there is "a substantial basis in law and fact for questioning the guilty plea." United States v. Milton, 46 M.J. 317, 318 (C.A.A.F. 1997) (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)) (quotation marks omitted). In order to establish that Gaston's absence from his unit was terminated by apprehension, the facts on the record must establish that his return to military control was involuntary. See United States v. Fields,

United States v. Gaston, No. 05-0462/AF

13 C.M.A. 193, 196, 32 C.M.R. 193, 196 (1962).  We granted

review to determine whether Gaston's providence inquiry

established that he was guilty of absence without leave

terminated by apprehension.  We also granted review to determine

whether the sentence affirmed by the Court of Criminal Appeals

was greater than the sentence approved by the convening

authority in violation of Article 66(c), UCMJ, 10 U.S.C. § 866

(c) (2000).[1]

## BACKGROUND

The unauthorized absence charge alleged that Gaston "[d]id,

at or near OAFB [Offutt Air Force Base], Nebraska, [on or about]

13 Jan 03, without authority, absent himself from his place of

duty at which he was required to be, to wit:  Bldg 457, Rm 700,

located at OAFB, NE and did remain absent until he was

apprehended [on or about] 17 Jan 03."  At a pretrial motion

hearing, Gaston testified regarding the termination of his

absence:  "I was notified by the dorm director that everyone was

looking for me, and I immediately told him that I needed to get

---

[1] We granted review of the following specified issues:

> I.  WHETHER APPELLANT'S GUILTY PLEA TO BEING
> ABSENT FROM HIS PLACE OF DUTY AT WHICH HE
> WAS REQUIRED TO BE AND TO HIS ABSENCE BEING
> TERMINATED BY APPREHENSION WAS PROVIDENT.
>
> II.  WHETHER THE AIR FORCE COURT OF CRIMINAL
> APPEALS IMPROPERLY INCREASED APPELLANT'S
> SENTENCE BY APPROVING A TWO-THIRDS

3

dressed and meet him in the front.  And when I did that, he said

he would call the Shirt to come down and pick me up, and they

did so."

Gaston's statements at the providence inquiry regarding the

unauthorized absence offense consist of the following:

> I am guilty of this offense because on 13
> January 2003, I remained absent from my
> unit, which was the 38th Reconnaissance
> Squadron.  I was in my dorm room and just
> did not leave.  I was not supposed to be on
> the base on 13 January 2003; however, since
> I did not report to the location where I
> should have been, I knew that I had a duty
> to report to work that day and let my
> squadron know I was there -- where I was.  I
> did not have proper authority from anyone
> who could give me leave or permission to be
> absent from my squadron, and I remained
> absent in my room until 17 January 2003,
> when the dorm manager came to my room and
> told me that my squadron was looking for me.
> I am confident that my absence was
> terminated by apprehension because neither
> me, nor anyone working on my behalf,
> voluntarily told anyone where I was.  I was
> found when the squadron came looking for me.

The day before the beginning date for the unauthorized absence

offense, Gaston's unit deployed to Saudi Arabia and his failure

to move with his unit formed the basis for the missed movement

charge.

The sentence imposed by the military judge included, in

part, "forfeiture of two-thirds pay per month for six months;

---

FORFEITURE OF PAY AT THE E-4 RATE RATHER
THAN AT THE E-1 RATE.

and a reduction to E-1." When the convening authority acted on the sentence he was advised that Gaston had not been notified that his sentence could include a reduction. To remedy this error the convening authority approved all of the adjudged sentence except for the reduction to E-1. On review, the Court of Criminal Appeals noted that Rule for Courts-Martial (R.C.M.) 1003(b)(2) requires that a sentence which includes partial forfeitures must state the dollar amount to be forfeited each month, and that the military judge had erroneously referenced "forfeitures of two-thirds pay per month for six months." To correct this error the lower court affirmed the sentence approved by the convening authority, but instead of "two-thirds pay" the court stated the forfeiture would be $1,053.00 per month, an amount equal to two-thirds pay at the E-4 rate.

### DISCUSSION

1.  Termination of Absence by Apprehension

This court will set aside a plea of guilty if it finds that there is "a substantial basis in law and fact for questioning the guilty plea." United States v. Milton, 46 M.J. 317, 318 (C.A.A.F. 1997) (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991)) (quotation marks omitted). Gaston contends that it was not established at his providence inquiry that his return to military control was involuntary and therefore there was no basis for finding that his absence was terminated by

5

United States v. Gaston, No. 05-0462/AF

apprehension.  The Government responds that Gaston's return to military control was involuntary because it was not initiated by him and that on this basis the court can find his plea to absence terminated by apprehension was provident.  This court has stated:

> "[a]pprehension" contemplates termination of the accused's absence in an involuntary manner; and "termination otherwise" is an absence ended "freely and voluntarily."  In other words, the Manual provision does not differentiate between these two classes of termination by means of particular situations, but rather by way of a broad definition for each category.

Fields, 32 C.M.R. at 196 (discussing United States v. Nickaboine, 3 C.M.A. 152, 11 C.M.R. 152 (1953)).  Based on this differentiation, the military judge instructed Gaston, "Apprehension means that your return to military control was involuntary.  It must be shown that neither you nor persons acting at your request initiated your return."

The lower court noted that the providence inquiry in this case was "exceptionally brief and certainly not a model for how such an inquiry should be conducted."  Gaston, No. ACM S30372, slip op. at 1.  Because of this, we will look to the entire record to determine whether facts to support Gaston's guilty plea have been established.  See United States v. Jordan, 57 M.J. 236, 239 (C.A.A.F. 2002) ("When this Court has addressed a bare bones providence inquiry, we have not ended our analysis at the edge of the providence inquiry but, rather, looked to the

6

entire record to determine whether the dictates of Article 45, RCM 910, and [United States v. Care, 18 C.M.A. 535, 40 C.M.R. 247 (1969)] and its progeny have been met.").

Gaston's providence inquiry established that "the dorm manager came to my room and told me that my squadron was looking for me." He concluded that he was involuntarily apprehended because "neither me, nor anyone working on my behalf, voluntarily told anyone where I was. I was found when the squadron came looking for me." When testifying on a pretrial motion Gaston stated that when the dorm manager told him that "everyone was looking for me, . . . I immediately told him that I needed to get dressed and meet him in the front. And when I did that, he said he would call the Shirt to come down and pick me up, and they did so."

While these statements establish that it was the dorm manager who initiated contact with Gaston, it does not automatically follow that the contact with the dorm manager constituted Gaston's return to military control. The Manual for Courts-Martial defines apprehension by military authority as requiring apprehension "of a known absentee." Manual for Courts-Martial, United States pt. IV, para. 10.c.(10)(b) (2005 ed.). There is no evidence that the dorm manager knew that Gaston was an absentee or that he knew anything other than that Gaston was being sought by his squadron. Gaston did not make

United States v. Gaston, No. 05-0462/AF

the dorm manager aware of his status as an absentee. See United States v. Jackson, 1 C.M.A. 190, 192-93, 2 C.M.R. 96, 98-99 (1952) (finding that a servicemember who was tried and convicted at a summary court-martial by one command, while he was absent without leave from another command, has not had his absence terminated because the command that exerted control over him was not aware of his status as an absentee).

Article 7, UCMJ, 10 U.S.C. § 807 (2000), defines apprehension as "the taking of a person into custody." It states that "[a]ny person authorized under regulations governing the armed forces to apprehend persons subject to this chapter or to trial thereunder may do so upon a reasonable belief that an offense has been committed and that the person apprehended committed it." Article 7(b), UCMJ. Nothing in the record establishes that the dorm manager believed Gaston had committed an offense or that the dorm manager had the authority to take him into custody. Without this authority, the mere fact that the dorm manager made contact with Gaston while he was on base and in his dormitory room is not sufficient to establish that Gaston was under military control. See Jackson, 2 C.M.R. at 98 ("[A]n absentee's casual presence at a military installation, unknown to competent authority and for purposes primarily his own, does not end his unauthorized absence.").

The dorm manager also did not take steps to take Gaston into custody. Gaston's statements to the military judge do not establish that the dorm manager exerted military control over him or control of any type. The dorm manager did nothing other than tell Gaston that his squadron was looking for him when he found him in his dorm room. The dorm manager did not give Gaston any orders to turn himself in, to go anywhere, or to remain where he was, and Gaston did not act pursuant to any instruction or request by the dorm manager. See United States v. Raymo, 1 M.J. 31, 32-33 (C.M.A. 1975) (finding exertion of military control over a servicemember who was absent without leave where an officer with authority to apprehend the servicemember directed him to go speak to the FBI, and the servicemember subsequently complied with that direction). Only after Gaston said he would meet the dorm manager in front did the manager say that he would call Gaston's first sergeant. Nothing in this encounter leads us to believe that Gaston was in military custody or control based upon his brief contact with the dorm manager.

We conclude that when the dorm manager told Gaston his squadron was looking for him, Gaston voluntarily surrendered by going to the front of the dorm where he met Colonel Kramer who then read him his rights and placed him on restriction. Because we conclude that Gaston's absence was terminated by his

voluntary surrender rather than by apprehension we affirm Gaston's conviction only for the lesser offense of absence without authority terminated by surrender to military authority.

We further conclude that this error was harmless as to sentencing. First, this change has no impact on the maximum authorized sentence in this case which was limited by the jurisdiction of the special court-martial. See Article 19, UCMJ, 10 U.S.C. § 819 (2000). Additionally, in arguing on sentencing trial counsel did not focus on the nature of Gaston's return to military control, but rather on the effect of his actions on the morale of his unit and on other troops deployed to the Middle East. Therefore, we affirm the sentence as adjudged, subject to our resolution of Issue II below.

2.   Sentencing Error

The sentence imposed by the military judge included, in part, "forfeiture of two-thirds pay per month for six months; and a reduction to E-1." The military judge made two errors in imposing this sentence. First, he failed to inform Gaston that he could be sentenced to a reduction to E-1, and second, he failed to state the sentence of partial forfeitures as a whole dollar amount as required by R.C.M. 1003(b)(2). That rule also provides that if a sentence includes a reduction then the forfeiture should be based on the grade to which the accused is reduced. Had the military judge complied with R.C.M. 1003(b)(2)

10

and stated the forfeiture amount as a whole dollar amount at the reduced grade of E-1, it would have been $767.00 per month.

The convening authority properly remedied the military judge's first error by disapproving that portion of the sentence that included a reduction to E-1. However, he did not correct the error regarding the statement of the forfeitures. The convening authority, in taking action on a sentence, may "approve, disapprove, commute, or suspend the sentence in whole or in part." He may not increase the sentence adjudged by the court-martial. Article 60(c)(2), UCMJ, 10 U.S.C. § 860(c)(2) (2000). The Staff Judge Advocate advised the convening authority of this limitation, and "[i]n the absence of evidence to the contrary, it is assumed that the convening authority followed the law set out in his Staff Judge Advocate's review." United States v. Johnson, 8 C.M.A. 173, 177, 23 C.M.R. 397, 401 (1957) (Quinn, J., concurring). We therefore conclude that when the convening authority approved the sentence of "forfeitures of two thirds pay per month" adjudged by the military judge he approved a forfeiture of $767.00 per month for six months, which was two-thirds of an E-1 monthly pay.

The Court of Criminal Appeals took note of the military judge's second error, but in fashioning a remedy the court stated the whole dollar amount of the forfeitures as $1053.00 per month, or two-thirds of Gaston's pay at the E-4 rate rather

than the E-1 rate.  A Court of Criminal Appeals "may act only with respect to the findings and sentence as approved by the convening authority."  Article 66(c), UCMJ.  The sentence approved by the convening authority included a bad-conduct discharge, confinement for six months and forfeiture of two-thirds of an E-1's pay or $767.00 per month.  Therefore, the action of the Court of Criminal Appeals in imposing forfeitures greater than those approved by the convening authority improperly increased Gaston's sentence in violation of Article 66(c).

## DECISION

The decision of the Air Force Court of Criminal Appeals is affirmed as to findings except that with regard to Charge I we affirm only a conviction for the lesser offense of absence without authority terminated by surrender to military authority. We affirm only so much of the sentence as includes a bad-conduct discharge, confinement for six months, and forfeitures of $767.00 per month for six months.

United States v. Gaston, No. 05-0462/AF

BAKER, Judge, with whom CRAWFORD, Judge, joins (concurring in result):

The question presented is whether Appellant pled providently to the charge of unauthorized absence terminated by apprehension. This Court will not overturn a plea as improvident unless there is a substantial basis in law or fact for doing so. United States v. Harris, 61 M.J. 391, 398 (C.A.A.F. 2005). An appellant bears the burden of demonstrating that such a substantial basis in law or fact exists. United States v. Hays, 62 M.J. 158, 167 (C.A.A.F. 2005). I agree with the majority that Appellant has done so; however, I write separately to articulate why I believe this is a close case and to distinguish my understanding of the facts from that presented by the majority.

This Court's case law regarding apprehension emphasizes three factors in determining whether an unauthorized absence is terminated by apprehension or not: (1) was the return to military control voluntary?; (2) did the accused initiate his return to military control?; and (3) was the military control exercised over an accused a knowing control. United States v. Fields, 13 C.M.A. 193, 196-97, 32 C.M.R. 193, 196 (1962); United States v. Nickaboine, 3 C.M.A. 152, 156, 11 C.M.R. 152, 156 (1953). Depending on context, this Court has placed more or less weight on each factor.

In this case, Appellant argues that the military judge erred by accepting his plea to unauthorized absence terminated by apprehension because the record establishes that Appellant returned to military control voluntarily. At the very least, Appellant argues, the record contains inconsistent facts that warranted further inquiry before the military judge accepted Appellant's statement. I agree with this latter argument, because there are just not enough facts in the record to fairly infer whether Appellant was apprehended or voluntarily surrendered.

In evaluating a plea, we look to the entire record, including any fair inferences that can be drawn from the record. United States v. Redlinski, 58 M.J. 117, 119 (C.A.A.F. 2003). The record is factually light. Three of Appellant's statements are relevant here:

> A. I was notified by the dorm director that everyone was looking for me, and I immediately told him that I needed to get dressed and meet him in the front. And when I did that, he said that he would call the Shirt to come down and pick me up, and they did so.
>
> Q. What happened after that?
>
> A. I went down and went in front of Colonel Kramer, and he read me my rights, and I was put on base restriction and dorm restriction.
>
> . . . .
>
> A. . . . I remained absent in my dorm room until 17 January 2003, when the dorm manager came to my room and told me that my squadron was looking for me. I am

2

confident that my absence was terminated by apprehension because neither me, nor anyone working on my behalf, voluntarily told anyone where I was. I was found when the squadron came looking for me.

On the one hand, based on these statements, the military judge might well have concluded that Appellant's apprehension was involuntary because it was initiated by the dorm director who had reason to know that Appellant was absent from his place of duty. Otherwise, the dorm director would not have indicated that he or she would call the First Sergeant to pick Appellant up. One might well infer that a dorm director, whatever his status or rank, would not expect the First Sergeant to come and give the Appellant a ride to work, unless the Appellant were in trouble. This reading of the record is supported by our case law emphasizing "initiation" as determinative of apprehension. See Fields, 13 C.M.A. at 196-97, 32 C.M.R. at 196. It is also supported by Appellant's statement to the military judge that "I am confident that my absence was terminated by apprehension" and Appellant's acknowledgment that the First Sergeant picked him up at the dorm.

On the other hand, one might also reasonably infer from these same statements that Appellant voluntarily surrendered to military control. Having been tipped off by the dorm director that his command was looking for him, Appellant decided to get dressed and asked the dorm director to meet him in the front.

One might infer that Appellant exercised a voluntary choice, for Appellant might also have gotten dressed and headed out the backdoor. Or, he might have bought more time with the dorm director by expressing surprise, thanking him for the information, and then advising the dorm director that he would find his own way to the unit before making his way to the front gate.

Fair inferences can be drawn in either direction. One or two more questions might have resolved this apparent inconsistency between the initiation of Appellant's surrender and his voluntary arrival at the front door of his dorm. For example, did the Appellant think he had a choice when the dorm director arrived? Did the dorm director have the authority to apprehend Appellant if need be? How much time elapsed between the dorm director's arrival and the First Sergeant's? In light of these uncertainties, there is a substantial basis in law as well as in fact to question the plea to apprehension. Nonetheless, for the reasons stated by the majority, the error is harmless and I concur in the result.