# CORRECTED COPY

# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, GALLAGHER,[1] and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 PERRY V. WARREN, JR.**
**United States Army, Appellant**

ARMY 20110790

U.S. Army Medical Department Center and School
Patricia H. Lewis, Military Judge
Lieutenant Colonel Randolph Swansiger, Staff Judge Advocate

For Appellant: Colonel Patricia A. Ham, JA; Major Jacob D. Bashore, JA; Captain Ian M. Guy, JA (on brief).

For Appellee: Lieutenant Colonel Amber J. Roach, JA; Major Robert A. Rodrigues, JA; Captain Steve T. Nam, JA (on brief).

14 August 2013*

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

GALLAGHER, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of absence without leave terminated by apprehension, two specifications of disobeying a noncommissioned officer, three specifications of wrongful use of a controlled substance, two specifications of wrongful distribution of a controlled substance, and three specifications of wrongful appropriation, in violation of Articles 86, 91, 112a, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, 912a, 921 (2006) [hereinafter UCMJ]. The military judge sentenced appellant to a dishonorable discharge, confinement for four

----

[1] Judge GALLAGHER took final action on this case prior to her permanent change of station.

*Corrected

years, forfeiture of all pay and allowances, and reduction to the grade of Private E1. The convening authority approved only so much of the sentence as provided for a bad-conduct discharge, confinement for four years, forfeiture of all pay and allowances, and reduction to the grade of Private E1.

This case is before us for review under Article 66, UCMJ. Appellate counsel assigned two errors to this court and appellant personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Both assigned errors merit discussion and relief. Those matters raised by appellant pursuant to *Grostefon* are without merit. We also find two additional issues not raised by the parties merit discussion and relief.

## LAW AND DISCUSSION

We review a military judge's acceptance of an accused's guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008); *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). "[I]n reviewing a military judge's acceptance of a plea for an abuse of discretion [we] apply a substantial basis test: Does the record as a whole show a substantial basis in law and fact for questioning the guilty plea." *Id.* at 322 (quoting *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)) (internal quotation marks omitted). There exists a substantial basis in fact to question a plea of guilty where a military judge "fails to obtain from the accused an adequate factual basis to support the plea." *Id.* (citing *United States v. Jordan*, 57 M.J. 236, 238 (C.A.A.F. 2002)).

In order to establish an adequate factual predicate for a guilty plea, the military judge must elicit "factual circumstances as revealed by the accused himself [that] objectively support that plea[.]" *United States v. Davenport*, 9 M.J. 364, 367 (C.M.A. 1980). It is not enough to elicit legal conclusions. The military judge must elicit facts to support the plea of guilty. *United States v. Outhier*, 45 M.J. 326, 331 (C.A.A.F. 1996). The record of trial must reflect not only that the elements of each offense charged have been explained to the accused, but also "make clear the basis for a determination by the military trial judge . . . whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty." *United States v. Care*, 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969).

"For this Court to find a plea of guilty to be knowing and voluntary, the record of trial 'must reflect' that the elements of 'each offense charged have been explained to the accused' by the military judge." *United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003) (quoting *Care*, 18 C.M.A. at 541, 40 C.M.R. at 247). "If the military judge fails to explain the elements to an accused, it is reversible error unless it is clear from the entire record that the accused knew the elements, admitted them freely, and pleaded guilty because he was guilty." *United States v. Jones*, 34 M.J. 270, 272 (C.M.A.1992). "Rather than focusing on a technical listing of the

elements of an offense, this Court looks at the context of the entire record to determine whether an accused is aware of the elements, either explicitly or inferentially." *Redlinksi*, 58 M.J. at 119.

*Absence Without Leave Terminated By Apprehension*

At trial, consistent with the pretrial agreement, appellant pleaded not guilty to desertion under Article 85, UCMJ, but guilty to the lesser-included offense of absence without leave terminated by apprehension in violation of Article 86, UCMJ. At the outset of the plea inquiry, the military judge listed the elements for absence without leave terminated by apprehension. The military judge neither provided a definition of "apprehension" nor explained that the mere fact an accused is apprehended by civilian authorities is insufficient to establish that an accused's return to military control was involuntary.[2]

---

[2] The relevant definition provides:

> "Apprehension" means that the accused's return to military control was involuntary. It must be shown that neither the accused nor persons acting at his request initiated the accused's return.
>
> That the accused was apprehended by civilian authorities, for a civilian violation, and was thereafter turned over to military control by the civilian authorities, does not necessarily indicate that the accused's return was involuntary. Such return may be deemed involuntary if, after the accused was apprehended, such civilian authorities learned of the accused's military status from someone other than the accused or persons acting at his request.
>
> In addition, the return may be involuntary if, after being apprehended by civilian authorities, the accused disclosed his identity as a result of a desire to avoid trial, prosecution, punishment, or other criminal action at the hands of such civilian authorities. However, if the accused disclosed his identity to the civilian authorities because of the accused's desire to return to military control, the accused's return should not be deemed involuntary or by apprehension.

(. . . continued)

Appellant acknowledged he understood the elements of the offense and then proceeded to explain why he was guilty of absence without leave terminated by apprehension. The following colloquy is the extent to which the military judge questioned appellant on his plea:

> MJ: Additional Charge III . . .
>
> ACC: Yes.
>
> MJ: Okay
>
> ACC: Ma'am, I had a lot of stuff going on between 24 – around 24 May 2011, and just ended up losing my head, ma'am, and running from my problems. Once a day or so went by and I realized what I had done, and then I didn't really know what to do. I remained absent for a while . . . . And later on I had a conversation with my First Sergeant – First Sergeant Young. I explained to First Sergeant Young that I was coming back to Fort Sam Houston. On my way back from Dallas, ma'am, it was a weekend and I was going to come out on Monday, and I got apprehended by [the San Antonio Police Department] and that's when I told them I was in the military, ma'am. My apprehension was around 8 July.
>
> MJ: Apprehended by the civilian authorities?
>
> ACC: Yes, ma'am.

---

(. . . continued)

> The arrest of an accused by civilian authorities does not, in the absence of special circumstances, terminate his unauthorized absence by apprehension where the record does not show such apprehension to have been conducted with or done on behalf of the military authorities. Thus, in the absence of special circumstances, mere apprehension by civilian authorities does not sustain the government's burden of showing the return to military control was involuntary.

Dep't of Army, Pam. 27-9, Legal Services: Military Judges' Benchbook [hereinafter Benchbook], para. 3-10-2 (1 Jan. 2010).

MJ: And why were you apprehended?

ACC:  I was apprehended for possession

MJ:  Okay.  And when were you released?

ACC:  I was released from civilian [confinement] on 11 June – 8 July, ma'am.  I am sorry.

MJ:  So the same day that you were –

ACC:  In my civilian apprehension, I was apprehended 11 June 2011, and I was released from the civilian [authorities] to the military on 8 July.

In regards to The Additional Charge and its Specification, the stipulation merely provided:

> On 25 May 2011, PV2 Warren absented himself from his unit, C Co., WTB, BAMC located at Fort Sam Houston, Texas.  At the time PV2 Warren absented himself, he did not have the authority to leave his unit as he had a court-martial scheduled to take place on 6 June 2011.  PV2 Warren remained absent, without authority, until he was apprehended by the San Antonio Police Department and released to military control on 8 July 2011.  PV2 Warren's return to military control was involuntary.

We find a substantial basis in law and fact to question the providence of appellant's plea with regards to the absence being terminated by apprehension. To establish that an absence was terminated by apprehension, "the facts on the record must establish [the] return to military control was involuntary." *United States v. Gaston*, 62 M.J. 404, 405 (C.A.A.F. 2006).  Mere proof of apprehension by civilian authorities is insufficient to establish that a return to military control is involuntary. *Id.* Rather, in order to establish the absence was terminated by apprehension, the record must indicate the apprehension was "connected with or done on behalf of the military authorities." *Id*. at 197.

During the providence inquiry, appellant informed the military judge that he was on his way back to Fort Sam Houston when he "got apprehended by SAPD and that's when [he] told them [he] was in the military."  The stipulation of fact merely sets out the conclusion that the return was involuntary.  In the absence of any definitions or explanations of the element "terminated by apprehension" and an absence of sufficient facts from appellant establishing his return to military control

was involuntary, we are not confident appellant's absence was terminated by apprehension. *See Jones*, 34 M.J. at 342. As such, we find the military judge abused her discretion in accepting appellant's pleas of guilty to the language "terminated by apprehension."

*Wrongful Use of a Controlled Substance*

Specification 2 of Charge I alleged appellant wrongfully used codeine, a Schedule II controlled substance. The specification alleged:

> In that [appellant], U.S. Army, did, at or near Fort Sam
> Houston, Texas, between on or about 22 December 2010
> and on or about 29 December 2010, wrongfully use
> codeine, a Schedule II controlled substance.

During the plea colloquy, the military judge listed the elements of the offense but failed to inform appellant that codeine's classification as a Schedule II controlled substance was an element of the offense. Additionally, the military judge did not take judicial notice that codeine was a Schedule II controlled substance and inform appellant she had done so.

In explaining why he was guilty of wrongfully using codeine, appellant admitted to using codeine; that he knew the substance was codeine; that he did not have a legal justification for his use; and that he knew his actions were wrongful because he did not have a prescription for the drug. Appellant did not discuss codeine's classification as a Schedule II controlled substance or that he knew codeine was illegal because of that classification.

Similarly, the stipulation of fact provided:

> PV2 Warren wrongfully used codeine between 22
> December 2010 and 29 December 2010. He used this
> codeine in his barracks room at Fort Sam Houston, Texas.
> PV2 Warren obtained this codeine from a prescription, not
> his own. He knew that the substance he was using was
> codeine. PV2 Warren had no legal justification or excuse,
> and he knew that he had no legal justification or excuse.
> He used the codeine in pill form by swallowing it.

The stipulation of fact, like appellant's providence inquiry, did not address codeine's classification as a Schedule II controlled substance at all, let alone as a required element of the offense.

6

Codeine's classification as a Schedule II controlled substance is "an essential element of the offense" and appellant must admit or be advised that codeine is a controlled substance "within the meaning of Article 112a(b)(3), UCMJ." *United States v. Bradley*, 68 M.J. 556, 559 (Army Ct. Crim. App. 2009). This court cannot presume codeine is a Schedule II controlled substance. *Id.*

Here, the military judge failed to inform appellant of an essential element of the offense. *See Redlinski*, 58 M.J. at 119 (holding the record of trial must reflect that the elements of 'each offense charged have been explained to the accused' by the military judge). As stated earlier, such an omission will constitute reversible error unless we can look to the record of trial to determine appellant was aware of the element and admitted his guilt. *See Jones*, 34 M.J. at 270. We are unable to do so in this case. Both appellant's providence inquiry and the stipulation of fact are silent as to whether appellant knew codeine was a Schedule II controlled substance and that such a finding was necessary to determine his guilt. There is a significant difference between use that is wrongful solely due to a lack of prescription and the wrongfulness of using a scheduled and controlled substance for which you have no prescription. As such, we find the military judge abused her discretion in accepting appellant's plea of guilty to wrongful use of codeine, a Schedule II controlled substance.

*Wrongful Appropriation of Government Property*

In Specification 2 of Charge II, appellant was charged with the wrongful appropriation of a television, property of the U.S. Army, in violation of Article 121, UCMJ. At trial, the military judge listed the elements of the offense but, again, failed to include any definitions in explanation of the elements. The military judge advised appellant that the elements of this offense were: appellant wrongfully appropriated a television, the property of the United States government; the property belonged to the United States government; the property was of some value; and that the taking was with the intent to temporarily deprive the United States government of the television. After acknowledging the elements provided by the military judge, appellant proceeded to explain why he was guilty of the charged offense:

> Ma'am, I am going to Spec 2, Charge II. On 29 November 2010, and 6 December 2010, I wrongfully took a TV from my barracks room on Fort Sam Houston and pawned it for $100.00. The next day I went and got it back. I intended only to deprive the government for the day. I am not sure how much the TV was worth; the pawn shop only gave me $100.00 for it. But later I found out it was actually worth $800.00.

7

The stipulation of fact adds that the appellant signed for the television set and that the taking of the television set was "wrongful because PV2 Warren was authorized to use the TV in his barracks room only . . . he was not authorized to remove the TV from his barracks room or sell the TV."

While appellant's actions may well have constituted the crime of wrongful appropriation, the failure of the military judge to correctly and fully explain the elements with regards to ownership, control, and possession, under the unique facts of this case, were fatal to a provident plea of guilt. Article 121, UCMJ, requires that the taking, obtaining, or withholding be from the possession of the owner or of any other person. *Manual for Courts-Martial, United States* (2008 ed.) [hereinafter *MCM*], pt. IV, ¶ 46.c.(c)(1). "Owner" refers to any person who, at the time of the taking, obtaining, or withholding, had the superior right to possession of the property in light of all conflicting interests. *MCM*, pt. IV, ¶ 46.c.(c)(ii). "Possession" means care, custody, management, or control." *MCM*, pt. IV, ¶ 46.c.(c)(i). Appellant, who was signed and accountable for the television owned by the United States government, pawned it one day and redeemed it the next. Absent adequate explanation of the elements to appellant, we are unconvinced that appellant providently understood and admitted he had, at the time of the offense, the specific intent to temporarily deprive the government of the use and benefit of a television for which he was signed. As such, we find the military judge abused her discretion when she accepted appellant's plea of guilty to wrongful appropriation.

*Violation of Lawful Order*

In Specification 2 of Charge III, appellant was charged with violating a lawful order given to him by a superior noncommissioned officer. The specification alleged:

> In that [appellant], U.S. Army, having received a lawful order from SSG J.M., a noncommissioned officer, then known by the said [appellant] to be a noncommissioned officer, to "Go directly to see your case manager," or words to that effect, an order which it was his duty to obey, did, at or near Fort Sam Houston, Texas, on or about 22 Dec 10, willfully disobey the same.

Consistent with his pretrial agreement, appellant entered a plea of guilty to the charged offense. In explaining his guilt to the offense, appellant provided:

> ACC: On Spec 2, ma'am, I was told to go see my case manager. And I had every intention on [sic] going to go see my case manager, SSG [JM], which was my squad leader at the time, who told me to go see him.

8

. . . .

MJ: Okay.

ACC: I didn't go see him whenever he told me to, ma'am.

Here, again, there is a substantial basis in law and fact to question the plea. During his providence inquiry, appellant never swayed from his statement that he "had every intention on [sic] going to go see his case manager." The military judge never provided any definition or further explanation of the element of willfulness to appellant. [3] Additionally, the military judge did not elicit additional facts to establish why appellant's timeline for seeing his case manager constituted an intentional violation of the order. As such, we find the military judge abused her discretion in accepting appellant's plea of guilty to the charged offense.

## CONCLUSION

Accordingly, upon consideration of the entire record, including those matters personally raised by appellant pursuant to *Grostefon*, we set aside the findings of guilt to Specification 2 of Charge I; Specification 2 of Charge II; and Specification 2 of Charge III.

We affirm only so much of the findings of guilty to Additional Charge III and its Specification as provides for findings of Guilty of a violation of Article 86, absent without leave not terminated by apprehension. The remaining findings of guilty are AFFIRMED. Reassessing the sentence on the basis of the error noted, the entire record, and in accordance with the principles of *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986), and *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F. 2006), to include the factors identified by Judge Baker in his concurring opinion in *Moffeit*, we affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of Private E1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered restored. *See* UCMJ art. 75(a).

---

[3] "Willful disobedience means an intentional defiance of authority." Benchbook, para. 3-15-2.

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court